## THE BERN.

### (Circuit Court of Appeals, Second Circuit.   March 10, 1914.)

### Nos. 185, 186.

TOWAGE (§ 11*)—INJURY TO TOW BY FLOATING ICE—LIABILITY OF TUG.

A tug, which started across the Hudson river in the daytime with a coal laden barge in tow alongside projecting ahead, *held* liable for injury to the barge by floating ice on the ground that when the ice was seen she should have placed the barge behind her on a hawser, instead of which she used it to push a way through the ice.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

Appeals from the District Court of the United States for the Southern District of New York.

Suits in admiralty by Bernard McLain and by the W. C. Mason Company against the steam tug Bern; the Philadelphia & Reading Railway Company, claimant. Decrees for libelants, and respondent appeals. Affirmed.

The following is the opinion of the District Court by Hough, District Judge:

Admittedly the Bern took libelant's barge through heavy ice, and, since it was broad daylight, it was well known that the towage was to be of this nature.

This statement about heavy ice is taken from the Bern's report to the local inspectors. Admittedly, the tug went at slow speed, and according to her engineer, stopped two or three times before the barge began to leak. This is corroboration, not only of the heaviness of the ice, but of the expected difficulties of navigation.

The engine was also backed, although there was no vessel in the neighborhood requiring this manœuvre. Why the engine was backed is explained by the deck hand, who says that "we backed to let the bow get easy into the ice" (this means the bow of the barge).

The result is that a very powerful tug of some 600 horse power, 113 feet long by 29 feet beam, and drawing 13 feet, used a laden scow as a ram with which to push through very heavy ice. The natural inquiry is: Why was not the barge put astern and the tugboat used to clear the ice?

The master of the tug gave his theory on this matter, expressing the opinion that, owing to the distance between his towing bitts and the stern of his tug, any tow astern, even on the shortest of hawsers, would sheer and yaw, and be quite as much exposed to injury by ice as if her bow were sticking out ahead.

In the first place, this explanation will not stand mathematical tests, and, in the second place, I do not think it is the true explanation; for the master

elsewhere said that he put the boat alongside "so I could handle her and land her proper." In other words, it is admittedly much easier to handle a tow in a slip and land her when she is alongside, than when upon a short hawser. This was the real reason for not towing astern.

Further, I am of the opinion that the expert testimony is against the Bern. His own expert, Capt. Knott (a man whose experience is very great, if not unsurpassed), did not uphold the view advanced by claimant. It is not necessary to pass upon the story of the barge master to the effect that he asked to be towed astern. In my opinion, reasonable prudence demanded that, at the time and place of disaster, the slower, more inconvenient, but safer method of towage should have been adopted.

Decrees for libelants.

These causes come here upon appeal from decrees of the District Court, Southern District of New York, holding the tug Bern liable for damages sustained by a coal scow and its cargo, while being towed through ice.

Armstrong & Brown, of New York City (P. M. Brown, of New York City, of counsel), for appellant.

Hyland & Zabriskie, of New York City (N. Zabriskie, of New York City, of counsel), for McLain.

James S. Macklin, of New York City (De Lagnel Berier, of New York City, of counsel), for Mason Co.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

PER CURIAM. Judge Hough has sufficiently discussed the evidence in the case and we concur with his findings and conclusion. The case of Monk v. Cornell Steamboat Co., 198 Fed. 472, 117 C. C. A. 232, which has been referred to in argument, treats of the duty of tug and tow when the situation as to ice is fully understood before starting. We do not think the tug in this case was at fault in starting from the stakeboat with the scow alongside. However, when she got over towards the New York shore, she found heavy ice and should then, if she decided to go on, have dropped the scow astern.

The decrees are affirmed with interest and a single bill of costs.