## THE E. T. HALLORAN.

## THE RUSSELL IV.

## HOWARD v. DOBBINS–TRINITY COAL CO., Inc., et al.

### No. 321.

Circuit Court of Appeals, Second Circuit.

May 6, 1940.

Joseph M. Howard, of New York City (John E. Purdy and Edmund F. Lamb, both of New York City, of counsel), for appellant.

Bailey & Muller, of New York City (Gerald J. McKernan and Julius F. Steinbrenner, both of New York City, of counsel), for appellee.

Before SWAN, CHASE, and PATTERSON, Circuit Judges.

SWAN, Circuit Judge.

In October 1938 the barge E. T. Halloran, owned by the appellant, was chartered by him to the appellee. The charter was the ordinary oral agreement for a specified per diem hire and for an indefinite period of time. The barge was without motive power and was manned by a bargee paid by the bailor. Concededly the barge was seaworthy when delivered and was returned in a damaged condition less than a month thereafter. The damage occurred while the barge, laden with a cargo of coal, was being towed by the steamtug Russell IV from Hoboken to 96th Street, Harlem River. When tied up at destination the barge was discovered to be leaking so badly that the combined efforts of her own gasolene pump and the tug's syphon could not keep her afloat. The tug then beached her at 100th Street where she sank within two hours. After the barge was raised and placed in dry dock, a hole was found on her port bow corner beginning about a foot from the bottom and extending upward through four planks. As shown by photographs the planks have the appearance of having been crushed or gouged out by contact with some hard, rough surface.

To recover for such damage the present libel was brought against the charterer. Its answer denied its own negligence and asserted negligence on the part of the tug, which by petition the charterer sought to implead; but process was not served on the tug and it never became a party to this suit. Instead, the owner and operator of the tug instituted a limitation proceeding in which Dobbins-Trinity Coal Co., Inc., filed a claim. Howard, however, did not. The

two suits were tried together by agreement but not as a consolidated cause. The trial judge made findings of fact and wrote an opinion. Howard's libel was dismissed with costs, and he has appealed.

By concession the libellant proved delivery in good condition and return by the charterer in damaged condition. He thereby made a prima facie case and became entitled to the benefit of a presumption of fault by the bailee or by those to whom it had entrusted the barge. The burden then rested upon the bailee to go forward with evidence to overcome the presumption by showing that the damage was not caused by its negligence or the negligence of those for whose conduct it was responsible. Alpine Forwarding Co. v. Pennsylvania R. Co., 2 Cir., 60 F.2d 734, certiorari denied 287 U.S. 647, 53 S.Ct. 93, 77 L. Ed. 559; O'Boyle v. United States, 2 Cir., 47 F.2d 585; Ira S. Bushey & Sons v. W. E. Hedger & Co., 2 Cir., 40 F.2d 417. It attempted to do this by the depositions of the bargee and his wife and by the testimony in court of the master of the tug Russell IV.

This evidence localized the time and place of the injury to the barge. It established that when off 75th Street on her final voyage the bargee took soundings and found the barge practically dry. She was the port hawser boat in a tow of three coal barges, the third of which was made fast astern of the starboard hawser boat. When abreast of 86th Street the port hawser boat took a sheer toward the Manhattan shore, which the tug succeeded in breaking about 89th Street, where a rocky ledge juts out farthest into the stream. The bargee testified that he saw through the cabin window that the barge was close to the bulkhead, ran out on deck, and found the barge about fifty feet from shore and "practically stopped". The tug was off to starboard attempting to pull the barge out of her sheer and during this effort the chock on the port bow of the barge, through which the hawser ran, was pulled loose. The testimony of the bargee's wife was that her husband looked out of the cabin window, said something, and ran out. While he was on deck she heard a rumbling or grating noise such as she had never before heard. The tug master admitted the sheer of the barge but said she never got closer to the shore than 75 feet. He was not conscious of her having hit anything. Shortly before the trial he took soundings at the point where he believed the barge came nearest to the shore. He testified that he found 6 or 7 fathoms of water. He did not however, sound closer to the shore than 60 feet. After the tow was straightened out the rest of the voyage proceeded without incident, and the barge was properly landed at the racks at 96th Street about 10 P. M. Shortly thereafter the bargee found that his barge was making water rapidly. He started his pump and notified the tug captain, who aided with the tug's syphon; but the water continued to gain until the barge filled and sank, as already stated.

The district judge found as a fact that the damage was caused by contact with some submerged object while the barge was in tow of the Russell IV. As a conclusion of law he held that the charterer had satisfactorily rebutted the presumption of negligence arising from the return of the chartered barge in damaged condition. In his opinion he expressed the view that the damage was "undoubtedly caused by contact with some submerged wreck or floating timbers." We think it more probable that the barge struck a rock. There was no evidence that any submerged wreck was in the vicinity of 89th Street, and the photographic appearance of the damaged planks is not such as would be likely to be caused by contact with floating timbers. Rather, it is such as one might expect to find if the port corner of the barge had been pulled across a jagged rock. The testimony indicated that the barge was dangerously near the shore; the bargee estimated the distance at 50 feet, the tug captain, whose opportunity for observation was less good, estimated it at 75 feet. It was night, when accurate estimates of distance over water are notoriously difficult. While it is true that the barge sustained no bottom damage, it is by no means impossible that the port corner of the bow could catch upon the projecting side of a jagged rock without the lowest plank striking. The probabilities are that this is what happened.

But really it is immaterial whether the object struck was a submerged rock or a submerged wreck. Whichever it was the contact and resulting damage occurred during an unexcused sheer which carried the barge close to the shore and into waters which the tug's master never intended her to enter. Evidence establishing such facts is not sufficient, in our opinion, to rebut the presumption of negligence by which the owner made his prima facie case against

the charterer. This is not similar to cases such as The Roslyn, 2 Cir., 93 F.2d 278, where sufficient evidence was given to show what happened and to rebut the presumption of negligence. Here the sheer and the object struck are still unexplained. While the fault was not the charterer's own it was a fault by those for whose lack of care the charterer must respond to the bailor. Gannon v. Consolidated Ice Co., 2 Cir., 91 F. 539; White v. Upper Hudson Stone Co., 2 Cir., 248 F. 893, certiorari denied 246 U.S. 665, 38 S.Ct. 335, 62 L.Ed. 929; Washington Tug & Barge Co. v. Weyerhauser Timber Co., 9 Cir., 22 F.2d 665; The Moran No. 10, D.C.S.D.N.Y., 41 F.2d 255.

The decree is reversed with directions to enter an interlocutory decree in favor of libellant.