CONNERS–STANDARD MARINE
CORP.
v.
OIL TRANSFER CORP. et al.

THE BEN TICHNOR.

THE EDNA M. MATTON.
Adm. No. 19000.

United States District Court,
E. D. New York.

Dec. 22, 1953.

Purdy, Lamb & Catoggio, New York City (Thomas Irving, New York City, of counsel), for libelant.

Macklin, Speer, Hanan & McKernan (Gerald J. McKernan, James N. Allan, New York City, of counsel), for respondent.

Mahar & Mason, New York City (Frank C. Mason, New York City, of counsel), for claimant-impleaded.

INCH, Chief Judge.

Libelant, Conners-Standard Marine Corporation, as owner of the steel tank barge Ben Tichnor instituted this suit against Oil Transfer Corporation for damages sustained by the barge between February 10, 1948 and March 10, 1948 while under charter to Oil Transfer Corporation. The charter was the ordinary oral harbor charter for an indefinite period at an agreed rate per day with a crew furnished by libelant.

Libelant through the testimony of its port engineer, Evans, made out a prima facie case against the charterer by proving delivery of the barge in good condition and its return in damaged condition. Evans testified that he inspected the barge in dry dock on the afternoon of February 9, 1948, that it was also inspected by the Coast Guard and the American Bureau of Shipping and that it was in good condition, particularly as to hull, cleats and bitts. He again examined the barge on March 11, 1948 and found the starboard bitt missing and also a cleat on the starboard side, and there were "bad indentations" in the barge's stern rake plating.

While the burden of proof which is on libelant does not change, The Roslyn, 2 Cir., 93 F.2d 278, 281, and cases cited, it is well established that when libelant has made out a prima facie case by proof of delivery of a vessel in good condition and return by the charterer in damaged condition, libelant thereby becomes entitled to the benefit of a presumption of fault on the part of the charterer or by those to whom the charterer entrusted the vessel. The burden then rests on the charterer "to go forward with evidence to overcome the presumption by showing that the damage was not caused by its negligence or the negligence of those for whose conduct it was responsible. Alpine Forwarding Co. v. Pennsylvania R. Co., 2 Cir., 60 F.2d 734, certiorari denied 287 U.S. 647, 53 S.Ct. 93, 77 L.Ed. 559; O'Boyle v. United States, 2 Cir., 47 F.2d 585; Ira S. Bushey & Sons v. W. E. Hedger & Co., 2 Cir., 40 F.2d 417." The E. T. Halloran, 2 Cir., 111 F.2d 571, 572. In the Alpine Forwarding Co. case, supra, Judge Learned Hand 60 F. at page 736, described the proof required to rebut the presumption as a "showing, either how the barge was injured, or that however that was, it was not due to his neglect. Cummings v. Pennsylvania R. Co., 2 Cir., 45 F.2d 152; Schoonmaker Conners Co. v. Lambert Transp. Co., 2 Cir., 268 F. 102. The second alternative requires proof of all that the defendant has done with regard to it."

In the instant case the various items of alleged damage resulted from three different incidents which should be considered separately.

The charterer attempted to rebut the presumption of fault as to the damage to the barge's starboard cleat by showing that the cleat was pulled out while the barge was in tow of the tug "Newport" on March 1, 1948 off Stamford, Conn. during heavy ice conditions. The charterer did not implead the tug Newport, although it impleaded the tug Edna M. Matton for other items of damage which will be discussed below, but merely introduced the following documentary evidence:

1. The barge's log entry for March 1, 1948 at 7:30 p. m. which read: "At this time, off Stamford, Tug Newport pulled the amidship's cleat on the starboard side clear from the deck".

2. A letter dated March 8, 1948 from libelant to Red Star Towing & Transportation Co., owner of the tug Newport, stating that it had a report that the tug pulled the cleat off the barge and that Red Star would be advised as to the time and place of survey.

3. A letter dated March 23, 1948 from libelant advising Red Star of the time and place of the survey.

4. An invoice dated March 25, 1948 which libelant sent to the charterer, Oil Transfer Corporation, for $556.70 stating in part "Cost of repairs to bitt, Barge Ben Tichnor, accident of March 8th, 1948 while in tow of the tug Newport."

5. A report by the barge's deckhand to libelant which stated: "On March 1st, 1948 at 7:30 P. M. off Stanford the tug Newport of the Red Star Line pulled midships st'br cleat clear off deck."

The charterer contends that the above documentary evidence is binding upon libelant and that it shows that the damage to the starboard cleat was caused by the negligence of the tug Newport and

not by any negligence of the charterer, particularly in view of the evidence introduced at the trial to the effect that during the charter period the heaviest ice conditions in years existed in and around New York Harbor.

■■ In my judgment the charterer has not adequately explained how the damage occurred. Far from showing all that it did with respect to the barge and that none of its acts was negligent, the charterer by the introduction of the above evidence showed, at most, that libelant had reports that this item of damage occurred at a particular time and place and while the barge was in tow of a particular tug. Even where the owner of a vessel commenced an action against an alleged third-party tortfeasor and alleged the time and place and manner of the happening of an accident it has been held that the owner is not bound thereby in a subsequent action against the charterer. The Lillian, D. C., 8 F.Supp. 625, affirmed De Mars v. Seaboard Sand & Gravel Corp., 2 Cir., 75 F.2d 1011. Here the burden of explanation was on the charterer, and the above documentary proof was insufficient to meet the presumption that the damage was due to the fault of the charterer. The charterer did not show any of the circumstances surrounding the delivery of the barge to the tug Newport or any of the circumstances preceding or during the happening of the accident. Thus, despite the above documentary evidence, the charterer has failed to sufficiently explain this item of damage and must be held primarily liable therefor.

As to the remaining items of damages, the charterer impleaded the tug Edna M. Matton. It appears that the damage to the after starboard bitt was occasioned on February 20, 1948 while the tug Matton was pushing the loaded barge ahead of it in push-boat fashion through heavy ice floes up the Hudson River below Newburgh, N. Y. The tug's pilot testified that the tow "came to one floe of ice and the ice cracked off to port and the barge started to follow the line of least resistance, naturally, and she followed the ice down and I put my wheel hard over to starboard to straighten the tug and keep her on course and the cable just cut right through the bitt on the barge." On cross-examination he admitted that it was necessary to make this maneuver "rather quickly" and that it may have put some extra strain on the cable to the bitt.

■ Although it may not be negligent under all circumstances for a tug to push a barge ahead of it through ice, there is authority for the view that "towing astern is the preferred and usual method to be employed". North River Barge Line v. Chile Steamship Co., D.C., 111 F. Supp. 895, 898. See: The Bern, 2 Cir., 213 F. 630; The Mary C. Black, D.C., 40 F.2d 304; The Bear, D.C., 11 F.2d 607. Here, in view of the evidence of the extremely heavy ice conditions existing on the Hudson River at this time, it was in my judgment negligent for the tug Matton to attempt to push this loaded barge ahead of it through extremely heavy ice.

Both the charterer and the tug attempt to avoid liability by asserting that libelant was chargeable with knowledge of the ice conditions in the Hudson River and that it assumed the risk of whatever might arise therefrom. However, there is no proof in this record that the charterer apprised libelant as to where the barge was to be consigned or that it was to be used through extremely heavy ice or that it was to be used in the manner in which the proof shows.

■ Expert testimony was also offered to show that the bitt was of light construction and that the maneuver which the pilot made would not ordinarily break the conventional bitt for barges of this type and size. The expert also testified to indentations on the bitt which in his opinion were caused by a chain and which weakened the bitt. However, libelant's proof that this barge was only three years old, that the bitts were of normal construction and thickness and that the barge was classified by the American Bureau of Ship-

ping and passed by the Coast Guard satisfies me, when taken together with all the other evidence, that the damage was not caused by any unseaworthy condition of the bitt, but that it was caused by the unusual strain to which the bitt was subjected when the barge was quickly maneuvered through abnormal ice conditions. Consequently, for the damage to the after starboard bitt, I find the tug Edna M. Matton primarily liable and the charterer secondarily liable.

There were two items of damage to the plates at the stern of the barge. The indentation on the face plate on the port side was caused on February 22, 1948 when the tug Matton, having the barge in tow alongside, attempted to push the barge, stern first, through heavy ice into a dock at Peekskill, New York. The tug pilot testified that the barge captain immediately reported this damage and that he himself saw it at the time. It was his testimony that "we pushed the barge into the ice as far as we could and then we took our lines off the barge and we went into the dock and we spent about two hours breaking the ice around the dock". He then took the barge in tow and brought it into the dock and during this maneuver the tow "was in ice all the while". When questioned as to the thickness of the ice at the time, he replied that "it was in broken windrows where it had frozen so that it was piled up three and four feet above the water and therefore it was hard to tell just how much of it was under water." The barge Captain testified that there was a "heavy contact" between the barge and the ice and that "the ice was up on the deck of the barge". Again, in view of this proof, it must be held that the tug was negligent for attempting to push libelant's barge through such abnormal ice conditions, and for this item of damage the tug Matton must be held primarily liable and the charterer secondarily liable.

The final item of damage was described as two indentations approximately eight feet below the deck level on the stern rake plate on the starboard side. This damage cannot be connected with the Matton tug. The barge Captain did not make any complaint to the tug as to this item of damage, and there is proof that at the time of the survey he admitted that he did not know how it occurred. There is also expert testimony to the effect that this damage could only have resulted from "a sharp instrument, a dock bolt for instance" and not ice. Although the tug may not be held liable for this item of damage, it remains unexplained as between the charterer and libelant, and accordingly the former must be held primarily liable therefor.

Findings of fact and conclusions of law are being filed herewith.

Settle decree.