**CONNERS–STANDARD MARINE CORPORATION, as Owner of THE Oil Barge BEN TICKNOR, Libelant,**

v.

**MARINE FUEL TRANSFER CORP. and Charles Valentine, Respondents,**

**THE Tug A. J. McALLISTER, McAllister Lighterage Line, Inc., Claimant-Impleaded.**

**MARINE FUEL TRANSFER CORP., Cross-Libelant,**

v.

**CONNERS–STANDARD MARINE CORPORATION, Cross-Respondent.**

**Nos. 19504, 19537.**

United States District Court
E. D. New York.

June 29, 1955.

Purdy, Lamb & Catoggio, New York City, for Conners-Standard Marine Corporation; Edmund F. Lamb, New York City, of counsel.

Mahar & Mason, New York City, for Marine Fuel Transfer Corp. and Charles Valentine; Frank C. Mason, New York City, of counsel.

Foley & Martin, New York City, for The A. J. McAllister; Christopher E. Heckman, New York City, of counsel.

ABRUZZO, District Judge.

The Conners-Standard Marine Corporation, the libelant, is the owner of a barge called the Ben Ticknor. The libel alleges that this barge was chartered to the respondents, Marine Fuel Transfer Corp. and Charles Valentine, by telephone and confirmed later by letter. It appeared at the trial that there was no evidence as against the respondent, Charles Valentine, and by consent the libel was dismissed without costs as to him.

It appears that the Ben Ticknor was being towed to Revere, Massachusetts, by the tug A. J. McAllister. This barge was loaded with oil, being a dumb steel

barge having no means of supplying steam heat to oil in her tanks. She did have coils with connections through which steam could be passed to heat her cargo from the outside. This barge was loaded with oil at the Patchogue Oil Terminal, Brooklyn, New York, on March 17, 1950, and when she left for Revere had a one-foot freeboard. It encountered severe, stormy weather enroute through the Long Island Sound. During this bad weather the barge lost a great deal of its deck equipment and fittings overboard. Water got into the engine room and pump room through the ventilator, the exhaust, and the open metal gratings above the engine room. It was conceded that the cargo of oil was not in any way damaged. The tow left at 6 p. m. on March 17th and arrived at New London, Connecticut, between 8 and 9 p. m. of March 18th.

The respondent Marine Fuel Transfer Corp. after the commencement of this libel suit impleaded the tug A. J. McAllister. In this impleader it alleged that the damages sustained by the Ben Ticknor were by reason of the negligence of the tug A. J. McAllister. Marine Fuel Transfer Corp. also raised the contention that the damage to the Ben Ticknor was caused by the negligence of the captain of that barge. In any event Marine Fuel Transfer Corp. lays blame on the Ben Ticknor and/or the A. J. McAllister.

For the purpose of understanding exactly what must be decided, reference will be made in this opinion to the libel by Conners-Standard Marine Corporation against Marine Fuel Transfer Corp. and the impleader of the tug A. J. McAllister as problem No. 1. The Marine Fuel Transfer Corp. not only impleaded the tug A. J. McAllister but cross-libeled the Conners-Standard Marine Corporation. The basis of that particular cross-libel is to recover expenses allegedly sustained by the Marine Fuel Transfer Corp. from Conners-Standard Marine Corporation because of the delay when the barge reached Revere, Massachusetts, in discharging this cargo of oil. This presents problem No. 2.

The tug A. J. McAllister, the claimant-impleaded, is not a party to the cross-libel and is, therefore, not concerned with problem No. 2.

By stipulation of all the parties it was conceded that both of these matters be tried at the same time.

For the purpose of brevity, Conners-Standard Marine Corporation will hereinafter be referred to as Conners, Marine Fuel Transfer Corp. as Marine, and the tug A. J. McAllister as McAllister.

Four witnesses were called. Joseph F. Herrman was the vice president of Conners and arranged the charter of this barge with Charles Valentine of Marine. George Hamp was the Marine superintendent of Marine. Suerr Knutsen was the captain of the barge Ben Ticknor. William F. Geiger was the acting master of the tug McAllister.

It is conceded that Marine chartered the barge Ben Ticknor from Conners at the agreed price of $185 per day for nine days. Libelant's Exhibit 1 of March 16, 1950, contained the clause that the barge was to be "returned to us in the same condition as when received, less ordinary wear and tear." It was returned in a damaged condition. A great deal of its deck equipment and fittings were washed overboard. Water got into the engine room and pump room through the ventilator, the exhaust and the open metal gratings above the engine room which caused a great deal of damage.

The libelant relies upon its contract of charter for recovery. It contends that the charterer is *prima facie* liable for the damage and has the obligation of showing that the damage did not occur either through its fault or the fault of the barge captain. Ira S. Bushey & Sons v. W. E. Hedger & Co., 2 Cir., 40 F.2d 417; O'Boyle v. United States, 2 Cir., 47 F.2d 585; Cummings v. Pennsylvania R. Co., 2 Cir., 45 F.2d 152; Alpine Forwarding Co. v. Pennsylvania R. Co., 2 Cir., 60 F. 2d 734; The E. T. Halloran, 2 Cir., 111 F.2d 571; O'Donnell Transp. Co. v. M. & J. Tracy, 2 Cir., 150 F.2d 735; Seaboard Sand & Gravel Corp. v. Moran

Towing Corp., 2 Cir., 154 F.2d 399; The C. W. Crane, 2 Cir., 155 F.2d 940; North River Barge Line v. Chile Steamship Co., D.C.E.D.N.Y., 111 F.Supp. 895, affirmed, 2 Cir., 213 F.2d 884.

As said by the Circuit Court for this Circuit in O'Donnell Transp. Co. v. M. & J. Tracy, supra, in affirming a decree of this Court, 150 F.2d at page 737:

"Liability is imposed upon charterers upon the theory that they should at all times care for the barge while she is under charter to them and that they are under a duty which may not be delegated to others. While they do not warrant the safety of the barge they have an obligation to have it properly cared for by any person with whom they entrust it. * * *"

and, similarly, more recently in the case of Seaboard Sand & Gravel Corp. v. Moran Towing Corp., supra, 154 F.2d at page 402:

"It is the duty of a charterer, as bailee, to care for a vessel while it is under charter to him and he cannot delegate that duty to others. While he does not warrant the safety of the vessel intrusted to him, he does have an obligation to have her properly cared for by any person to whom he intrusts the vessel and is liable for the acts of negligence of the person to whom he intrusts her."

In the case of The E. T. Halloran, supra, a chartered barge sustained damage while in tow as a result of striking some undisclosed object close to shore off 86th to 89th Streets, East River, during an unexcused sheer which carried the barge into waters which she was not intended to enter. In that case the District Court exonerated the towing vessel on the ground that there was no proof that her negligence caused the damage. Upon appeal to the Circuit Court as against the charterer only, the Circuit Court reversed the District Court and held that the charterer must, nevertheless, respond for the damage, since it occurred during an unexcused sheer which carried the barge into waters which she was not intended to enter, saying, 111 F.2d at page 572:

"By concession the libellant proved delivery in good condition and return by the charterer in damaged condition. He thereby made a prima facie case and became entitled to the benefit of a presumption of fault by the bailee or by those to whom it had entrusted the barge. The burden then rested upon the bailee to go forward with evidence to overcome the presumption by showing that the damage was not caused by its negligence or the negligence of those for whose conduct it was responsible. Alpine Fordwarding Co. v. Pennsylvania R. Co., 2 Cir., 60 F.2d 734, certiorari denied 287 U.S. 647, 53 S.Ct. 93, 77 L.Ed. 559; O'Boyle v. United States, 2 Cir., 47 F.2d 585; Ira S. Bushey & Sons v. W. E. Hedger & Co., 2 Cir., 40 F.2d 417."

and further at page 573:

"While the fault was not the charterer's own it was a fault by those for whose lack of care the charterer must respond to the bailor. Gannon v. Consolidated Ice Co., 2 Cir., 91 F. 539; White v. Upper Hudson Stone Co., 2 Cir., 248 F. 893, certiorari denied 246 U.S. 665, 38 S.Ct. 335, 62 L.Ed. 929; Washington Tug & Barge Co. v. Weyerhauser Timber Co., 9 Cir., 22 F.2d 665; The Moran No. 10, D.C.S.D.N.Y., 41 F.2d 255."

Marine claims the damage was caused by the negligence of the barge captain Knutsen. Knutsen testified that she was loaded with only a one-foot freeboard and he first learned that they were going to Revere, Massachusetts, after they were loaded. When the barge left Brooklyn he testified that he had made the barge seaworthy to the extent that he tightened and tied down everything on deck necessary for the voyage. The cargo hose was lost during the storm. He had lashed this hose with three eight-inch lashings but all the lines broke. A canvas lifeboat cover and a 7 x 4 foot tool

box located between tanks No. 2 and No. 3 contained all kinds of trimming. The canvas cover had been lashed down and the tool box had been fastened by a rope. He saw the rope hanging overboard but he could not get on deck because the water was right up to the top of the cabin and the only place he could get out was from the skylight on top of the house. During the part of the trip from Brooklyn to New London, Connecticut, unquestionably foul weather was encountered. There is testimony to the effect from this barge captain that instead of a one-foot freeboard there should have been at least a three-foot freeboard. The waves went over the house which stood four feet above the deck and neither he nor his mate were able to walk on the deck. Water came through the door and skylight of the cabin. His hawser lines were packed but the packing got wet and was leaking. When he left Brooklyn all the doors and the skylight had rubber packing to keep them watertight. As the result of water getting into the cabin locker, the accumulation of water sent the barge down by the head so that the bow was lower than the stern, causing her to sheer. There is evidence to the effect that the Marine did not state the barge was to be taken to Revere, Massachusetts. Marine had used the Ben Ticknor before to Stamford and Tarrytown but never to Boston.

Hamp, the Marine superintendent, went to Revere after the Ben Ticknor arrived there. His examination of the barge revealed that she had lost equipment and that water had gone down into the exhaust and flooded the engine and pump rooms. The generator was out of commission and, in fact, all operations were out. He testified that the barge was so constructed that if all openings had been properly closed water could not have entered the barge and gotten into the engine and pump rooms.

The claimant-impleaded McAllister contends that whatever damage occurred during the trip to New London was due to the negligence of the barge captain.

On March 21, 1950, Conners dispatched a long letter to Marine disclaiming any knowledge that the Ben Ticknor was to be taken to Boston, and stating further that the barge should not have been towed all the way to New London in the face of a storm which admittedly the captain of the McAllister was forewarned of and that in addition thereto it was a mistake to endeavor to take the barge to Boston with only a one-foot freeboard.

On March 22, 1950, another letter was dispatched by Conners to Marine complaining that the Plant at Boston refused to permit the Ben Ticknor to commence discharging her cargo. None of these letters was answered by Marine.

Geiger, the master of the tug, testified that he had a radio and had received storm warnings of southwest winds shifting to northwest from Block Island to Cape Hatteras. He thought that the velocity of the wind was from 25 to 35 or 40 miles an hour.

Problem No. 1 should be resolved in favor of Conners. I find from these facts that the captain of the barge was not negligent; that the deck equipment and water getting below was not due to any act of negligence on his part. He did all that was reasonably required of him and the Court believes his testimony is truthful.

The decisions indicate that the charterer is *prima facie* liable and it is his obligation to show that the damage occurred by reason of the negligence of the barge captain. The charterer, as owner *pro hac vice*, had the authority of giving towing orders and assumed the responsibility of sending the boat out in the open waters of Long Island Sound with only a one-foot freeboard.

There remains the question with respect to the liability of the tug A. J. McAllister as part of problem No. 1. Her captain had received storm warnings of southwest winds shifting to northwest, but the winds were southwesterly and favorable to him when he set out on his

voyage. While en route the winds turned to northwest which were unfavorable.

There are many cases which hold that barges in the month of March are apt to meet or encounter winds of gale proportion and rough water. The T. J. Hooper, 2 Cir., 60 F.2d 737.

Thirty knots an hour has been held to be no extraordinarily severe March weather. Eastern Gas & Fuel Associates v. Martin Marine Tr. Co., 3 Cir., 190 F.2d 394.

■ It does not seem to the Court that it was the duty of the master of the McAllister to have made a detailed examination of the barge he was requested to tow. The only thing that the captain of the McAllister might have foreseen as some warning of danger was that the barge was heavily laden but Marine, the charterer, gave the order for towage to the McAllister. This order amounted to a representation to the tug that the barge was capable of making the voyage. Southgate v. Eastern Transp. Co., 4 Cir., 21 F.2d 47, at page 49, wherein the Court stated as follows:

"The law properly controlling, determinative of the questions thus presented, is too well settled to admit of serious controversy, or to require extensive citation of authority. A vessel, seeking the services of a towboat, holds itself out to be sufficiently staunch and strong—that is, seaworthy—to withstand ordinary perils of the sea to be anticipated on a voyage; and a tug has also the right to assume that the tow will carry a competent and sufficient crew, and is not liable for dangers, either from the unseaworthy condition of the barge or for the failure of its owners to properly man and equip the same. The Syracuse, D. C., 18 F. 828; The Edmund L. Levy, 2 Cir., 128 F. 683."

■ By virtue of these decisions the Court cannot lay fault on the McAllister although the Court does not agree with the contention of McAllister that it was the failure of Knutsen, the captain of the Ben Ticknor, to make the barge watertight that caused the damage. The Court finds that the McAllister is void of responsibility.

■■ There remains problem No. 2 with respect to the cross-libel of Marine for damages it claims to have sustained in Boston in the discharge of this cargo of oil. The charterer Marine had the duty to take notice of weather data and storm warnings, and it was its obligation to protect this barge entrusted to its care from dangers of exposure to seas produced by storms. The delay in the discharging of the cargo cannot be attributed to the barge. Marine had used the barge before and knew that steam would have to be supplied from some outside source to heat the cargo to bring it up to a temperature at which it could be pumped out of the barge. Marine was aware that the trip in March during cold weather tended to reduce the temperature in the tanks. The three or four day delay in discharging the cargo was not explained. The letter of March 22d by Conners to Marine calls attention to the refusal of the Boston Plant to permit the barge Ben Ticknor to commence to discharge her cargo. This letter was not answered. The evidence points up clearly that the damage sustained in discharging this cargo is attributable only to Marine.

As stated before, the fault lay with Marine, the charterer, in not returning the Ben Ticknor in the same condition as when received. Marine assumed the risk of sending the Ben Ticknor to Boston with a one-foot freeboard, knowing that she was apt to encounter severe March weather, and with full knowledge that under its charter party it was expected to return the barge Ben Ticknor in the same condition as when received, ordinary wear and tear excepted.

Findings of fact, conclusions of law and a decree may be entered in accordance with this decision.