CONSOLIDATED GRAIN AND BARGE CO., INC., Plaintiff,

v.

CONSOLIDATED TOWING CO., Defendant.

No. 75–127A(4).

United States District Court, E. D. Missouri, E. D.

Nov. 24, 1975.

---

Goldstein & Price, Hubert I. Binowitz, St. Louis, Mo., for plaintiff.

Michael D. O'Keefe, St. Louis, Mo., for defendant.

## OPINION

NANGLE, District Judge.

In this action, plaintiff Consolidated Grain and Barge Company, Inc. seeks to recover damages sustained when its barge was damaged by ice.

Having tried the case sitting without a jury the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Plaintiff Consolidated Grain and Barge Company, Inc. is a corporation organized and existing pursuant to law. At all times material herein it was the owner pro hac vice of Barge ABS–1444B, a box-type barge, having a square bow and stern.

2. Defendant Consolidated Towing Company is a corporation authorized and existing under law. At all times relevant herein, it was the operator of a motor vessel, the M/V Cecilia Carol.

3. Plaintiff entered into an agreement with American River Transportation Company ("ARTCO") whereby ARTCO would tow Barge ABS–1444B from St. Paul, Minnesota to St. Louis, Missouri.

4. At this time, the M/V Cecilia Carol was under charter to ARTCO. ARTCO had the right to control the movements of the M/V Cecilia Carol. Defendant, however, employed the crew members serving on the vessel. Defendant's agreement with ARTCO relieved defendant from any liability incurred as a result of the M/V Cecilia Carol being required to tow in ice.

5. On April 5, 1974, the loaded barge ABS–1444B was picked up by the M/V Cecilia Carol and was placed in tow with five other loaded barges and the M/V Cecilia Carol and tow proceeded southbound on the Upper Mississippi River.

6. On the same day, two additional barges were added to the tow at Red Wing, Minnesota. Of the eight loaded

barges, four were rake end barges and four were box-type barges. The rake end barges were located in the starboard and port lead positions and the stern starboard and center stern positions. The box-type barges were positioned in the center string, lead position and throughout the second row of barges. Barge ABS–1444B was in the center string, lead position. The M/V Cecilia Carol was pushing the tow.

7. There was evidence which tended to establish that rake end barges navigate more easily through ice because of the shape of the bow. There was also evidence that the position of the rake end and box-barges in the tow was necessary to be able to stop the tow in the river if need be. This Court concludes that the make-up of the tow was proper under the circumstances.

8. Defendant's captain, Jeff Daily, had complained to ARTCO about the ice conditions in the Upper Mississippi River but ARTCO had ordered the captain to proceed with the trip southbound. The evidence establishes that the ice in the Mississippi at that time was unusually bad, being a foot to a foot and a half thick in some areas. In addition, the testimony of the captain was to the effect that "everybody was breaking up tows out there".

9. As the trip continued on the evening of April 5, 1974, heavy ice was encountered. In an effort to navigate, the captain would back the boat and tow up, in order to gain momentum and proceed in a forward direction again, to force a breakup of ice in front of the boat and tow. These maneuvers were also repeated by Pilot Donald L. Bradley during his shift relieving the captain.

10. At approximately 2:15 a. m., Barge ABS–1444B collided with an ice gorge at Mile 766 in the Upper Mississippi River. This collision caused damage to the bow end of the barge.

11. Following the collision, the barge was transported to the harbor at St. Louis, Missouri and later moved to Destrehan, Louisiana. Prior to the collision, the barge was not damaged in any manner.

12. While in Destrehan, Louisiana, the barge was surveyed by W. T. Reeves and M. E. Kebodeaux, both qualified marine surveyors. Mr. Reeves' opinion was that the damage sustained by the barge was the result of a collision with an ice gorge.

13. On or about May 9, 1974, the barge was returned to St. Louis. Mr. John J. Stickling, Jr., a qualified marine surveyor employed by Marine Loss Control, Inc. surveyed the barge again, agreeing with the conclusion of Mr. Reeves. Mr. Stickling arranged for and supervised the repair of the vessel at the shipyard of Louisiana Dock Company, in Alton, Illinois.

14. The parties have stipulated that plaintiff expended $19,608.46 in the repair of damages to Barge ABS–1444B. In addition, plaintiff established that it had spent $1,721.49, the net cost of purchasing a barge of similar dimension and capacity to Barge ABS–1444B in order to fulfill commitments during the pendency of the barge's repairs. This amount represents the difference between the purchase price of a new barge and the costs that would have been incurred in operating Barge ABS–1444B. During the period of repairs, however plaintiff also paid Alton Barge Service, the owner of Barge ABS–1444B, the daily charter rate of $47.00 per day, an amount totaling $940.00. Such amount should be included as a cost of operating the barge and accordingly, the net cost of the new barge is $781.49. Plaintiff also incurred expenses in the amount of $182.60 for the services of Mr. Stickling in surveying and supervising repairs. The use of such services is customary.

## CONCLUSIONS OF LAW

This Court has jurisdiction over the parties and the subject matter of the suit. 28 U.S.C. § 1333.

While not an insurer, it is clear that a tower has a duty to exercise rea-

sonable care and skill such as prudent navigators would exercise under the circumstances. *Hart v. Blakemore*, 410 F.2d 218 (5th Cir. 1969); *Curtis Bay Towing Co. of Virginia, Inc. v. Southern Lighterage Corp.*, 200 F.2d 33 (4th Cir. 1952).

■ Defendant contends that its agreement with ARTCO relieves it of any liability arising from damages caused by ice. If this were a suit by ARTCO, perhaps that would be true. Plaintiff, however, can not be held to the terms of an agreement to which it was not a party. See *Loreto Compania Naviera, S.A. v. Bradley and Baker*, 382 F.2d 980 (5th Cir. 1966). Accordingly, the agreement is inapplicable in this context.

■ Defendant also contends that it was merely following ARTCO's orders in proceeding with the tow and can not be held responsible. Nonetheless, the tower does owe a duty to the barge owner. If a breach of that duty causes damage to the barge, even if the tower is acting at the directions of another, the tower may be held liable. See *North River Barge Line v. Chile S.S. Co., Inc.*, 213 F.2d 882, 883 (2nd Cir. 1954). In those cases cited to this Court by defendant in which courts held that the tower was not liable, the evidence established that the tower was acting under the direct orders of the barge owner. Such is not the case herein. There has been no evidence which establishes that plaintiff communicated with defendant, either directly or indirectly, that the tow was to proceed in the face of the weather conditions. Having found that a duty of reasonable care exists, the Court concludes that defend-

ant breached that duty herein by proceeding with the tow in the known ice conditions. To proceed knowing that tows were breaking up in the ice was a breach of that duty of care such as prudent navigators would exercise.

■ This Court has found that the tow itself was properly made up under the circumstances. It has been found to be negligent, however, for a tow to be pushed through ice, rather than "towing astern", where there were heavy ice conditions. *Conners-Standard Marine Corp. v. Oil Transfer Corp.*, 120 F.Supp. 180 (E.D.N.Y.1953). Accordingly, the Court concludes that defendant was also negligent for proceeding through the ice in such a manner.

■■ This Court is of the opinion that the items of damages sought by plaintiff over and above the stipulated damages are proper. See *Sinclair Refining Co. v. The America Sun*, 188 F.2d 64 (2nd Cir. 1951); *Goodwin v. The Jackie B.*, 147 F.Supp. 292 (D.C.N.C. 1957), *aff'd*, 248 F.2d 544 (4th Cir). Moreover, an award of pre-judgment interest, computed from the time expenditures were made, is recoverable., *Mid-America Transportation Company, Inc. v. Rose Barge Line, Inc.*, 477 F.2d 914 (8th Cir. 1973).

The Court will enter judgment accordingly.

### ORDER OF JUDGMENT

Pursuant to the opinion filed this date,

It is hereby ordered that plaintiff shall have judgment against defendant at defendant's costs in the amount of $20,572.55, with prejudgment interest computed from the dates of expenditures.