492 F.Supp. 475 (1980)
MID-AMERICA TRANSPORTATION COMPANY, Plaintiff,
v.
GLADDERS TOWING COMPANY, etc. et al., Defendants.
No. 77-911A(2).
United States District Court, E. D. Missouri, E. D.
July 3, 1980.
*476 Michael D. O'Keefe, Thompson & Mitchell, St. Louis, Mo., for plaintiff.
Gary T. Sacks, Goldstein & Price, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
Plaintiff Mid-America Transportation Company brought this action in admiralty to recover for damage to its barge and cargo allegedly caused by defendant's negligence.
This case was tried before the Court sitting without a jury. The Court having considered the pleadings, the testimony and depositions of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure.

FINDINGS OF FACT
1. Plaintiff Mid-America Transportation Company ("Mid-America") is a corporation organized and existing under law and is the owner of Barge MAT-19.
2. Defendant Gladders Towing Company ("Gladders") is a corporation organized and existing under law and is the operator of the M/V Jean Gladders.
3. MAT-19 is a semi-intergrated, covered-hopper barge which was built in 1958. The cargo hoppers of the barge were designed to be watertight.
4. On or about January 4, 1974, MAT-19 was loaded with soybeans in Hennepin, Illinois. The barge was then moved down the Illinois and Upper Mississippi Rivers to St. Louis between January 6 and January 10, 1974. This movement was performed by the M/V White Dawn and the M/V Tri-W, neither of which was owned or operated by defendant. During this movement, ice was encountered on the Illinois River, and the tow of which MAT-19 was a part forced its way through the ice with MAT-19 at the head of the tow.
5. After its arrival in St. Louis, MAT-19 was moored at the Universal Towing Company fleet until January 19, 1974. The fleeting personnel noticed nothing unusual about MAT-19. The fleeting area was not owned or operated by defendant.
6. On January 19, the M/V Jean Gladders assumed control of MAT-19 as part of a tow which was to be taken to New Orleans. When the MAT-19 was first picked up by defendant, defendant's crew noticed a slight listing in the barge and ice in the bow rake compartment. The crew believed that the MAT-19 was riding satisfactorily to make the trip to New Orleans. MAT-19 was placed at the head of the tow. In such a position, as opposed to a position in the middle or rear of the tow, it was more likely that water would enter the bow rake compartment.
*477 7. During the trip to New Orleans, the bow rake compartment of MAT-19 was periodically pumped to keep the water level down after the ice in the compartment began to melt. The crew of defendant had no way of knowing whether the cargo hopper was watertight, as it was supposed to be.
8. During the voyage to New Orleans the tow of the M/V Jean Gladders ran aground in heavy fog. MAT-19 was on the opposite side of the tow from the barge which ran aground, however, and was well out into the river and away from the point of impact. There is no credible evidence that this incident caused damage to the MAT-19.
9. The M/V Jean Gladders and its tow arrived in New Orleans on January 27, 1974, at which time MAT-19 was delivered to a fleeting area. Some time between January 27 and January 30, 1974, MAT-19 was moved to the grain elevator where it was to be unloaded. This movement was done by a vessel neither owned nor operated by defendant.
10. While being unloaded, it was discovered that a portion of the cargo was wet and damaged. Further investigation showed several cracks and holes in the outer hull and the wall to the cargo hopper, which allowed water into the cargo hopper. The last time MAT-19 was used, it transported grain with no water damage to the cargo. There was no evidence to pinpoint the date on which the barge or its cargo were damaged.
11. The damaged soybeans were sold at salvage for $2.71 a bushel. Approximately five thousand seventy nine bushels were damaged. The market price for soybeans at that time and location was $6.50.
12. Plaintiff incurred expenses for a surveyor in the amount of seven hundred seventy-one dollars and fifty cents ($771.50), which is fair and reasonable. Plaintiff also paid five hundred thirty-one dollars and sixteen cents ($531.16) for repairs to MAT-19.

CONCLUSIONS OF LAW
This is an admiralty and maritime claim within the meaning of Rule 9(h), Federal Rules of Civil Procedure, and this Court has jurisdiction thereof pursuant to 28 U.S.C. § 1333.
Plaintiff seeks to impose liability upon defendant in this case on two related theories. First, plaintiff claims that cracks in MAT-19's outer hull and cargo hopper walls, which allowed water to seep into the hopper and destroy a portion of the cargo, were caused by defendant's negligence. Even if these cracks were not defendant's fault, however, plaintiff also argues that defendant was negligent, in view of defendant's knowledge of leaks in the outer hull, in placing MAT-19 at the head of the tow rather than in the middle or rear where less water would get into the bow rake compartment.
Defendant's responsibilities in this case are clear. Defendant is not a bailee or insurer of MAT-19, Stevens v. The White City, 285 U.S. 195, 52 S.Ct. 21, 76 L.Ed. 517 (1932), but rather is under a duty to exercise the reasonable care and maritime skill that prudent navigators employ in performing similar services. Id., Mid-America Tr. Co., Inc. v. National Marine Service, Inc., 497 F.2d 776 (8th Cir.), cert. denied 425 U.S. 937, 96 S.Ct. 1671, 48 L.Ed.2d 179 (1976). The burden is on plaintiff, as the party asserting negligence, to prove it. Stevens, supra; Mid-America Tr. Co., Inc., supra.
On the evidence in this case, this Court can not say that plaintiff has shown that the cracks in the hull or walls of the cargo hopper were the result of the negligence of defendant. At most, plaintiff has shown that the condition did not exist the last time MAT-19 was used, and that it did exist when MAT-19 was delivered to New Orleans. Such proof is not sufficient to raise a presumption of negligence on the part of defendant. Stevens, supra.
First of all, MAT-19 was in the control of defendant only a portion of the voyage from Hennepin to New Orleans. At least three other parties also had control of *478 MAT-19 for a portion of the trip. It is just as likely that the damage occurred while the barge was in one of those parties' control. See, for example, Consolidated G. & B. Co., Inc. v. Consolidated Towing Co., 404 F.Supp. 634 (E.D.Mo.1975), in which a tower is held liable for damage to a barge caused by pushing through ice on the river. In fact, defendant's crew testified to having seen ice on the bow rake compartment on January 19, which tends to indicate that the damage had occurred prior to defendant's having taken control of MAT-19.
In any event,
... The burden of proof as to respondent's negligence remained upon petitioner throughout the trial. His contentions clearly show that the evidence leaves the time, place, and cause of the injury in the realm of conjecture. The evidence is consistent with an hypothesis that the tug was not negligent and with one that it was, and therefore has no tendency to establish either.
Stevens, supra, 285 U.S. at 203-204, 52 S.Ct. at 350. Under these circumstances, plaintiff has not shown that the damage was caused by any negligence on the part of defendant. Plaintiff's only evidence of negligence is that one of the barges in defendant's tow ran aground on the trip to New Orleans. There is no evidence, however, other than speculation and conjecture, that this grounding caused any damage to MAT-19. As far as MAT-19 is concerned, plaintiff has shown nothing other than that the barge was in a damaged condition when it reached its destination, and was not in such a condition prior to the trip. In this respect, this case differs markedly from Mid-America Tr. Co., Inc., supra, in which plaintiff proved that its barge was damaged when it went aground while under defendant's control.
Likewise, plaintiff has failed to produce any evidence which would justify a conclusion that defendant was negligent in the placing of MAT-19 at the head of the tow. As far as defendant was concerned, MAT-19 had a leak in the outer hull which was not serious enough to prevent its safe towage to New Orleans. This opinion ultimately proved correct. Defendant knew nothing of the leak in the cargo hopper. In fact, plaintiff had a duty to deliver a seaworthy barge, Nat G. Harrison Overseas Corp. v. American Tug Titan, 516 F.2d 89 (5th Cir. 1975), and defendant had a right to rely on plaintiff to fulfill this duty. Massman Const. v. Sioux City and N. O. Barge Lines, 462 F.Supp. 1362 (W.D.Mo.1979). Defendant was not required to make a detailed inspection of plaintiff's barge to ascertain its seaworthiness. Id.
The leaks in the cargo hopper of MAT-19, for which plaintiff has not shown defendant to be responsible, made MAT-19 unseaworthy. Ohio River Company v. M/V Irene Chotin, 238 F.Supp. 114 (E.D.La.1965). Had MAT-19 been seaworthy, the placing of it on the head of the tow would have been entirely reasonable. Under these circumstances, defendant has not breached its duty to use ordinary care in the towage of plaintiff's barge. Judgment will therefore be entered for defendant.