NAT G. HARRISON OVERSEAS CORPORATION, Plaintiff-Appellant-Cross Appellee,

v.

AMERICAN TUG TITAN etc., Defendant,

Triangle Towing & Transportation Co., Inc., Claimant Owner Appellee-Cross Appellant.

Thurston CRAWFORD d/b/a River Transit Co., et al., Plaintiffs-Appellees-Cross Appellant,

v.

NAT G. HARRISON OVERSEAS CORPORATION, Defendant-Appellant-Cross Appellee.

TRIANGLE TOWING & TRANSPORTATION CO., INC., Plaintiff-Appellee-Cross Appellant,

v.

Thurston CRAWFORD d/b/a River Transit Co., Defendant-Appellee-Cross Appellant,

Nat G. Harrison Overseas Corporation, Movant-Appellant-Cross Appellee.

NAT G. HARRISON OVERSEAS CORPORATION, Plaintiff-Appellant-Cross Appellee,

v.

JACKSON MARINE SALES, INC., Defendant-Appellee-Cross Appellant.

No. 74–2149.

United States Court of Appeals, Fifth Circuit.

July 21, 1975.

Opinion on Rehearing Oct. 8, 1975. See 520 F.2d 1104.

Steven R. Berger, Wesley G. Carey, R. Fred Lewis, Miami, Fla., for Nat Harrison.

Arthur Roth, Miami, Fla., for Triangle Towing & Trans. Co., Inc.

Frank J. Marston, Miami, Fla., for Thurston Crawford.

Reginald M. Hayden, Jr., Miami, Fla., for Jackson Marine Sales.

Roland R. Parent, George O. Mitchell, Miami, Fla., for appellees.

George E. Patterson, Jr., Donald M. Coon, Miami, Fla., Alfred H. O. Bourdreau, Jr., Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., Stanley Haves, Stanley A. Beiley, Miami, Fla., for other interested parties.

Before BELL, DYER and SIMPSON, Circuit Judges.

DYER, Circuit Judge:

This is an appeal and cross-appeals from an amended final judgment in four consolidated cases, all of which arose out of the capsizing of the barge Suncoaster while it was being towed from Miami, Florida to Guantanamo, Cuba. On the complaints, counter-claims and cross-claims of the various parties the district court found that the cargo had been negligently loaded and stowed, that the barge was unseaworthy, and that the tug was not negligent. We are in accord with these ultimate findings and disagree with its disposition of the case in only two minor respects: the sufficiency of the proof of damages awarded to the Jackson-Triangle joint venture against Harrison based upon loss of future earnings under the contract between them, and its allocation of damages for demurrage and extra towage.

Because the district court's extensive findings of fact on all issues except as noted above, are not only not clearly erroneous, McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20, but have abundant support in the record, we allude to only so much of the evidentiary background of the case as is necessary for a frame of reference to discuss the respective contentions of the various parties.

Thurston Crawford, d/b/a River Transit Co., is the owner of the barge Suncoaster. He bare boat chartered the barge to Jackson Marine Sales, Inc. for 60 days with an option to purchase for $400,000. Jackson entered into a joint venture with Triangle Towing & Transportation Co., Inc., owner of the tug Titan, by the terms of which Jackson was to receive the revenue for ocean transportation of cargo and, after paying the crew's wages, fuel, food and other expenses incurred by the tug, the profits were to be divided with Triangle.

Jackson entered into a contract with Nat G. Harrison Overseas Corporation to provide ocean transportation for 30,000 net short tons of concrete aggregate from Miami, Florida to Guantanamo, Cuba, for $4.50 per ton, with stevedoring and port charges to Harrison's account. Demurrage was to be compensated at $1,200 per day for the Titan and $400 per day for the Suncoaster, or a total of $1,600 per day.

Jackson took delivery of the barge from Crawford in New Orleans and had it towed to Key West where it was taken over by Triangle and towed to Miami. The first voyage of the barge was without incident except for unloading difficulties in Guantanamo caused by Harrison. A claim for demurrage was made at the rate of $1,600 per day for the 5 days, 9 hours and 5 minutes for a total of $8,650.03. Due to a loading delay of some 37 hours in Miami, Florida for the second voyage, an additional demurrage claim of $2,127.86 was made.

Upon the barge's return to Miami from its first trip to Guantanamo, Harrison's stevedores loaded it in such a manner that the cargo was peaked in hatches Nos. 1 and 2 and there were void spaces in the wings of those hatches.

On the second voyage the Titan, with the Suncoaster in tow, encountered rough weather. Five days out the barge capsized. She returned to the surface in an upside down position and was towed back to Miami where she was delivered to a salvor retained by Jackson. At this time the barge had sustained damage in the amount of $133,500.

An underwater survey disclosed that four caps to the six-inch sounding tubes which connected with the flotation wing tanks were missing. The threads on the inside of the caps had wasted away with rust. This destroyed the watertight integrity of the barge. Moreover, improper installation of the doors in the flotation wing tanks permitted water to flow freely between the tanks although they were supposed to be watertight. Finally, because of prior improper repairs to the slope sheets in the main hopper com-

partment, there was no watertight integrity between the main hopper and the wing walls. As a result of these conditions an excessive amount of water entered the barge and the absence of watertight doors and compartments permitted the water to shift and cause a list.

The district court found that neither the improper loading nor the unseaworthy condition of the barge would alone have caused the capsizing of the barge and the loss of the cargo, but that the concurrence of each was an equal proximate causative factor resulting in the disaster.

Salvage work was done, off and on for almost seven months, under a no-cure, no-pay contract. The barge was deliberately sunk. Further and extensive damage resulted, and when the barge was finally refloated and righted it was a constructive total loss. The court found that the period of time utilized by the salvors was unreasonable and could not have been reasonably anticipated by any of the parties to the consolidated actions.

In Harrison's suit against the tug Titan and her owner Triangle, the court denied Harrison's claim based on negligent towage; however, it awarded Triangle $24,887.50 on its counterclaim against Harrison, that being one-half share of the lost earnings of the Jackson-Triangle joint venture caused by Harrison's negligent stowage of the barge, reduced 50 per cent by reason of the unseaworthiness of the barge, which was chargeable to Triangle as a party to the Jackson-Triangle joint venture.

In Crawford and Jackson's suit against Harrison, the court awarded Crawford $66,750 against Harrison for negligent stowage of the cargo resulting in the loss of the barge, and $5,543.73 for salvage towing charges, both items having been reduced one-half by reason of the unseaworthiness of the barge. Jackson recovered $10,783.89 for demurrage on the first and second trips from Harrison. Jackson also recovered $24,887.50 from Harrison for its share of lost earnings caused by the negligent stowage of the

barge, and $8,000 as salvage expenses, both items having been reduced one-half by reason of the unseaworthiness of the barge. Harrison was awarded $18,885.55 against Crawford and Jackson, which represented its damages caused by the unseaworthiness of the barge as reduced one-half by reason of negligent stowage. The claim of Triangle against Crawford and the claims of Crawford against Triangle were each dismissed.

In Harrison's suit against Jackson apparently no judgment was entered. It is of no moment, however, because the issues raised there were raised and disposed of in Crawford and Jackson's suit against Harrison.

Harrison appealed, while Crawford, Jackson, and Triangle cross-appealed. We treat their contentions *seriatim*.

### Harrison's Appeal

█ Harrison attacks the findings of the district court that a major proximate cause of the capsizing of the Suncoaster was Harrison's failure to adequately and properly stow the cargo aboard the barge; that the barge could not have capsized solely as the result of being unseaworthy; and that the tug had no responsibility for the improper loading, and was not negligent in the management of the tow, on the grounds that these findings are individually and collectively clearly erroneous.

It would serve no useful purpose to detail the evidentiary basis for the court's findings. Suffice it to say that it was undisputed that Harrison had the obligation to load and stow the cargo and that it undertook that obligation. There was abundant evidence that the cargo was not leveled into the wings of Nos. 1 and 2 hatches, but was wet and was peaked in those hatches leaving a void of approximately 25 per cent of the barge's cargo capacity which, because of the prevailing wind and sea conditions, permitted the cargo to shift to the port side of the cargo spaces causing a list to port and the barge's eventual capsizing.

█ Harrison never really confronts this objective evidence. Its assertion

that it had no duty to *insure* the Suncoaster's safe passage misses the mark. The only obligation charged to Harrison by the district court was to properly load and stow the cargo. Harrison had undertaken this duty under its contract with Jackson and was obliged to carry it out in a reasonably safe manner.

It is well established that a stevedore is under a contractual duty of workmanlike performance. . . . This Court has repeatedly held that the question of whether a stevedore was negligent so as to breach his warranty of workmanlike performance is a question of fact to be determined by the trier of fact.

Southern Stevedoring and Contract Co. v. Hellenic Lines, Ltd., 5 Cir. 1968, 388 F.2d 267, 270.

We also reject Harrison's attack on the district court's finding that the Suncoaster could not have capsized solely as a result of being unseaworthy. Substantial evidence was introduced concerning the proximate cause of the capsizing and the court resolved this issue against Harrison. "The decision of the trier of fact cannot be overturned unless it is clearly erroneous and manifestly against the weight of the evidence." *Hellenic Lines, Ltd., supra,* at 270.

 Harrison also faults the trial court for not finding that Triangle made an inadequate inspection of the barge prior to accepting the tow, and further contends that Triangle knew or should have known of the improper loading of the cargo. We disagree. Under a towage contract the tug is not a bailee of the vessel in tow, or of its cargo. Stevens v. The White City, 1932, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699. "In a contract of towage, the owner of the tow is responsible for the seaworthiness of his vessel and the owner of the tug for its safe navigation." Curtis Bay Towing Co. v. Southern Lighterage Corp., 4 Cir. 1952, 200 F.2d 33, 34. The owner of a tug is not responsible for the proper stowage of cargo on a barge, for an honest error of judgment on the part of the tug's master, nor for nonapparent unsea-

worthiness of the barge. New Orleans Coal & Bisso Towboat Co. v. United States, 5 Cir. 1936, 86 F.2d 53, 60–61, cert. denied, 1937, 300 U.S. 676, 57 S.Ct. 669, 81 L.Ed. 881. The master of the Titan was under no duty to make a detailed examination of the Suncoaster. Southgate v. Eastern Transp. Co., 4 Cir. 1927, 21 F.2d 47; Conners-Standard Marine Corp. v. Marine Fuel Transfer Corp., E.D.N.Y.1955, 135 F.Supp. 365. It follows that, on the evidence before it, the district court properly found no liability on the tug for taking the barge in tow with the cargo improperly stowed.

We need give little pause to Harrison's attempt to establish negligence on the part of the tug and crew in the management of the tow. It was undisputed that when the barge developed a port list after five days at sea, it would have been impossible to have put anyone aboard her and there was little else that could be done. The record clearly supports the court's finding that the tow failed to carry its burden of showing negligence on the part of the tug. *See* Schuylkill Transp. Co. v. Banks, 3 Cir. 1945, 152 F.2d 405.

Finally, Harrison contends that the court erred in the measure and amount of damages awarded against it in favor of Jackson and Triangle for lost earnings, and attacks, as clearly erroneous, the demurrage found due to Jackson. We consider Harrison's contention that the delays in unloading and loading the barge were occasioned by the condition of the barge to be frivolous, and thus sustain the demurrage damages. We are of a different view, however, concerning the damages for lost earnings.

 The agreement between Harrison and Jackson called for the latter to furnish transportation for the shipment of 30,000 net short tons of aggregate at the rate of $4.50 per ton or a total of $135,000. Harrison paid Jackson $36,450, leaving a balance due under the contract of $98,550. The district court awarded this $98,550 (reduced by one-half because of the unseaworthiness of the barge) to Jackson and Triangle as damages for

loss of future earnings. Harrison complains that in computing damages for loss of earnings the expenses saved in not having to perform the balance of the contract must be deducted, and that the amount of these savings, such as crews wages, fuel, food and similar expenses, were neither proven nor deducted from the award. Jackson takes issue with Harrison for challenging damages for the first time on appeal, while Triangle's response is that, in the absence of evidence to the contrary, the damages are the contract price since running expenses continue in any event. In our view, Harrison's position is correct, and may be properly raised on appeal because it is a claimed deficiency in proof. The principle involved is succinctly stated in Restatement of Contracts § 335 (1932).

If the defendant's breach of contract saves expense to the plaintiff by discharging his duty of rendering a performance in return or by excusing him from the performance of a condition precedent, the amount of this saving is deducted from the damages that would otherwise be recoverable.

*See also,* 5A Corbin, Contracts § 1038, at 237; Liberty Navigation & Trading Co. v. Kinoshita & Co., Ltd., Tokyo, 2 Cir. 1960, 285 F.2d 343, 346, cert. denied, 1961, 366 U.S. 949, 81 S.Ct. 1904, 6 L.Ed.2d 1242.

■ Harrison promised Jackson-Triangle a fixed price for performing the contract. Their damages are that sum less any savings accruing to them because they were not able to complete the contract. The burden of proof was on Jackson-Triangle to establish their loss, and properly so, because only they had the knowledge and figures to prove any savings. Schubert v. Midwest Broadcasting Co., 1957, 1 Wis.2d 497, 85 N.W.2d 449, 452; 22 Am.Jur.2d Damages § 296 (1965). *See* Dade County, Florida v. Palmer and Baker Engineers, Inc., 5 Cir. 1963, 318 F.2d 18, 24. Since Jackson-Triangle neither introduced evidence concerning what their expenses would have amounted to so that the district court could measure their profit by de-ducting the expenses from the contract price, nor made any showing that their running expenses would have continued in any event because the tug was idle, the measurement of lost profit by the court was incorrect. This being an error in law, the question of lost profit damages must be remanded for further proof and consideration of the issue as now defined.

### Crawford's Cross-Appeal

The district court found that Harrison's damages for loss of cargo, prepaid and unearned freight, stevedoring and port charges amounted to $37,711.11. Harrison recovered from Crawford and Jackson, jointly and severally, the sum of $18,885.55 representing the damages caused by unseaworthiness of the barge, as reduced 50 per cent by reason of Harrison's negligent stowage of the cargo.

■ Crawford protests that Harrison has no right of recovery for damages caused by the barge's unseaworthiness because in the suit initiated by Crawford there was no counter-claim filed by Harrison seeking such damages, nor was a post-trial Rule 15(b) motion filed to amend the pleadings to conform to the evidence. We find no merit to this contention. In the pre-trial stipulation, one of the issues of law reserved for determination by the court was "9(e) Whether Nat G. Harrison Overseas Corp. is entitled to recover damages alleged in 7(b) from . . . Thurston Crawford." In paragraph 7(b) of the Stipulation, which described the issues of fact, it was stated, "it is further the position of Harrison that the barge Suncoaster was unseaworthy and unfit for the proposed voyage from Miami to Guantanamo. . . . That Nat G. Harrison Overseas Corp. received losses from the sinking of the Suncoaster for prepaid but unearned freight, stevedoring and miscellaneous port expenses . . . which invoices total $37,711.11." We think this not only adequately but precisely pointed up Harrison's claim against Crawford for damages resulting from the barge's unseaworthiness, and the issue was thus tried

with the explicit consent of Crawford. He cannot now be heard to complain. Indeed Crawford delved deeply into the issue of the barge's unseaworthiness, inquiring into the condition of the manhole covers over the wing tanks, the previous grounding of the barge, the condition of the sounding tube caps, and the integrity of the watertight doors between the bulkheads.

The pre-trial stipulation having raised the issue of the unseaworthiness of the barge with respect to Harrison's claim for damages against Crawford, it was unnecessary for Harrison to formally amend its pleadings to assert its compulsory counterclaim. For the same reason it was also unnecessary for Harrison to invoke the provisions of Rule 15(b), Fed. R.Civ.P., although it could have done so below, or, as it has done, argued its applicability here. City of Green Cove Springs v. Donaldson, 5 Cir. 1965, 348 F.2d 197; Cooper v. Anderson, 5 Cir. 1960, 277 F.2d 449; Taliaferro v. Sims, 5 Cir. 1951, 187 F.2d 6.

■ Crawford next complains that his damages against Harrison should not have been reduced 50 per cent because of the barge's unseaworthiness because, as a bareboat charterer, he was not responsible in personam for conditions which arose subsequent to his relinquishment of the vessel under the charter, or for conditions which could have been ascertained by reasonable inspection. While we think this is a fair statement of the law, Kerr-McGee Corporation v. Law, 4 Cir. 1973, 479 F.2d 61; Ramos v. Beauregard, Inc., 1 Cir. 1970, 423 F.2d 916, cert. denied, 400 U.S. 865, 91 S.Ct. 101, 27 L.Ed.2d 104, a painstaking analysis of the record leads us to the firm conviction that the unseaworthiness of the Suncoaster was attributable to conditions which antedated the 60 day charter from Crawford to Jackson and which, for the most part, were not discoverable by reasonable inspection. The district court was therefore correct in reducing Crawford's recovery against Harrison by 50 per cent because of the unseaworthiness of the Suncoaster.

Before the barge capsized it was valued at $400,000. When it was returned to Miami, Florida in December, 1968, the reasonable cost of repairs for damage proximately related to the casualty was found to be $133,500. Some seven months later, when the salvors finally brought the barge to the surface after it had been deliberately sunk, it was a constructive total loss and was sold at Marshal's sale for $5,000. In limiting Crawford's damages to $133,500, (reduced by 50 per cent because of the barge's unseaworthiness) the district court found that due to the long delay in salvage operations (from December, 1968 through July, 1969) the barge suffered further and extensive damage which was not proximately caused by the casualty; that this was an unreasonable period of time for the salvage operation; and that it could not have been reasonably anticipated by any of the parties that the barge would have been left on the ocean floor for such a long period of time. Crawford, nonetheless, urges that Harrison should be held responsible for all damages which resulted in the vessel becoming a constructive total loss. We disagree.

Actionable negligence is not an abstraction, but must be determined by the circumstances surrounding each case. Thus, Crawford's reliance upon Federal Insurance Co. v. S. S. Royalton, 6 Cir. 1964, 328 F.2d 515; The Algonquin, 2 Cir. 1934, 70 F.2d 335; Allen & Robinson v. Inter-Island Steam Nav. Co., 9 Cir. 1929, 34 F.2d 83; and The Walter. A. Luckenbach, 9 Cir. 1926, 14 F.2d 100, cert. denied, 1927, 273 U.S. 741, 47 S.Ct. 335, 71 L.Ed. 868, is misplaced because while the original tort feasor in each of these collision cases was held liable for further damages caused by the master's erroneous attempts to mitigate damage, the result was mandated because the master's acts were found not to have been negligent at the time and under the circumstances then existing.

■ This case in proper perspective really involves the negligent performance of a no-cure, no-pay salvage con-

tract under which the salvor, employed by Crawford, deliberately sunk the barge and let it be exposed to conditions existing on the floor of the ocean for seven months, resulting in the coaming, forward deck, side deck housing, bow bitts and other portions of the deck being torn away. Harrison, whom Crawford seeks to hold liable for the full value of the barge, was not a party to the contract, was not consulted as to the terms and conditions of the contract, or even told the identity of the salvor. Moreover, Harrison's negligence was the improper stowage of cargo on Crawford's unseaworthy barge which later capsized due to the *concurrence* of both conditions. In these circumstances the

> question of whether the intervention of a new and independent cause or force will relieve the original actor from liability, disrupt the causal connection between the original wrong and the injury, or constitute a superseding cause, is to be determined by ascertaining whether the intervening cause, force, or occurrence was reasonably "foreseeable" or could or should have been anticipated.

Annot., 100 A.L.R.2d 942, 990 (1965). *See also* Restatement (Second) of Torts § 447 (1965). We fully agree with the district court that Harrison's improper stowage of the cargo was not a proximate cause of the post-capsizing loss because it was not foreseeable.

Crawford next urges that the district court committed error in its denial of pre-judgment interest against Harrison. We have recently stated the general rule as follows:

> Although allowance of interest is ordinarily within the discretion of the Trial Court, it is equally true that for property damage "interest from the date of loss has long been allowed, of course, in admiralty for property loss." National Airlines, Inc. v. Stiles, 5 Cir. 1959, 268 F.2d 400. This is the general rule prevailing in admiralty.

Alcoa Steamship Company v. Charles Ferran & Co., 5 Cir. 1971, 443 F.2d 250, 256, cert. denied, 404 U.S. 854, 92 S.Ct.

98, 30 L.Ed.2d 94. But we think that the unusual circumstances of this case—the coordinate effect of improper stowage with an unseaworthy barge which caused the capsizing—brings it within the exception to the general rule allowing pre-judgment interest in admiralty for property loss. In an analogous factual pattern we said:

> Dow also maintains that it was entitled to prejudgment interest computed from the date of the collisions, contending that the District Court's discretion to deny such interest must be based upon the existence of peculiar circumstances. . . . Granting the soundness of this principle as a general rule, we nevertheless believe that the circumstances of this case—including the serious and genuine dispute regarding ultimate liability contested in good faith by Dixie and the relative uncertainty of many of the legal and factual issues to be resolved, added to a mutual fault finding as to one of the collisions—provided the experienced and capable District Judge with an adequate basis for awarding interest only from the date of judgment. Kawasaki Zosensho of Kobe, Japan v. Cosulich Societa Triestina Di Navigazione, 5 Cir., 1926, 11 F.2d 836, 838; Chitty v. M/V Valley Voyager, 5 Cir., 1969, 408 F.2d 1354, 1358.

Dow Chemical Co. v. Dixie Carriers, Inc., 5 Cir. 1972, 463 F.2d 120, 123, cert. denied, 409 U.S. 1040, 93 S.Ct. 525, 34 L.Ed.2d 490. We find no abuse of discretion by the district court in this instance.

Finally, Crawford faults the district court for denying him recovery against Triangle for the loss of the barge. Crawford essentially adopts the arguments made by Harrison, *i. e.*, that the unseaworthy condition of the tow was ascertainable by reasonable inspection, and that those aboard the tug Titan took no action after becoming aware that the Suncoaster was in jeopardy. We have previously considered these contentions in some detail in connection with Harrison's appeal and found them

to be without merit. What we said with respect to the cargo interest is equally applicable to the hull interest. The district court's findings absolving the tug of any responsibility to either Harrison or Crawford were not clearly erroneous.

### Jackson Marine's Cross-Appeal

Jackson contends that its recovery from Harrison for lost earnings and salvage expense should not have been reduced by 50 per cent, nor should Harrison be entitled to recover from Jackson 50 per cent of the value of the cargo, pre-paid freight, stevedoring and port charges, because Harrison breached its warranty of workmanlike performance, or because, under the active-passive negligence doctrine, Harrison was the active wrongdoer. We disagree.

■ The short answer to Jackson's indemnity argument is that it is simply inapplicable when the relationship of Harrison and Jackson is considered. In order to be entitled to indemnity from Harrison, Jackson would have had to have paid out to a third party damages occasioned by conduct of Harrison for which Jackson was liable only by virtue of its relationship with Harrison and with respect to which Jackson was only passively negligent while Harrison was actively negligent. But here Jackson paid no damages as the result of Harrison's negligence and there is thus no basis for Jackson to recover indirectly from Harrison. The damages against Jackson were awarded because it provided an unseaworthy vessel. The district court found that the vessel could not have capsized solely because of improper stowage. Damages were apportioned on an equal basis for unseaworthiness and improper stowage. Jackson paid for damages occasioned by the Suncoaster's unseaworthiness and paid nothing for the damages resulting from improper stowage. Obviously then Jackson is not entitled to any indemnity against Harrison.

The same considerations point up the unsoundness of Jackson's active-passive negligence argument. To say that providing a barge that was unfit to go to sea by Jackson was only passive negligence is hyperbole, especially when the court found that had the barge been seaworthy it would not have capsized even though the cargo was improperly stowed.

Asserting that there was no claim by Harrison that Jackson and Triangle were engaged in a joint venture, and that the court erred in finding that there was such a relationship, Jackson argues that its damages should not have been reduced by 50 per cent.

■ It is difficult to understand why Jackson mounts this challenge. Since it provided an unseaworthy barge which required it to make a 50 per cent contribution to the loss of the cargo, and since Triangle was required to bear one-half of this award because of the joint venture, Jackson benefited in this respect from the court's findings. In any event, Jackson himself testified that his company was in a joint venture with Triangle, and the president of Triangle specifically confirmed this relationship. We find Jackson's argument without merit.

### Triangle's Cross-Appeal

■ We dismiss without further discussion Triangle's contentions that parallel Jackson's arguments concerning the lack of a joint venture, and concerning the right of Triangle to indemnity from Harrison. Nor do we need to labor long with Triangle's submission that it is entitled to indemnity from Crawford for its failure to furnish a seaworthy barge. Triangle had no contract, express or implied, with Crawford. Nor was it the charterer of the Suncoaster. It paid nothing to a third party on the basis of vicarious liability for Crawford. The reduction of Triangle's recovery for lost profits from Harrison was because of its joint venture with Jackson, not because of any legal relationship with Crawford. Thus, Triangle's reliance on Kerr-McGee Corporation v. Law, *supra*, and United States v. S. S. Wabash, S.D.N.Y.1971, 331 F.Supp. 145, involving indemnity by the owner to the charterer for cargo damage caused by pre-charter unseaworthiness, is inapposite. We find no

merit to Triangle's indemnity claim against Crawford.

Triangle towed the barge back to Miami, Florida after it capsized. The district court found that Triangle sustained separate damages for this in the amount of $11,087.50. For some unfathomable reason Crawford, not Triangle, was awarded this sum (reduced by one-half because of the unseaworthiness of the barge) against Harrison. The net result is that Triangle suffered the damage but was not permitted to recover while Crawford was permitted to recover the same item of damage as a windfall without having incurred any liability for it. Obviously, this aspect of the judgment, in favor of Crawford and against Harrison for $5,543.75, should be vacated and set aside, and judgment entered in favor of Triangle and against Harrison in like amount.

Finally, Triangle points out that while the district court was correct in finding that demurrage charges should be awarded against Harrison for delay in unloading on the first voyage in the sum of $8,650.02 and delay in loading for the second voyage in the sum of $2,133.36, totalling $10,783.89, this entire sum was improperly awarded to Jackson instead of being allocated three-fourths to Triangle and one-fourth to Jackson. The uncontradicted evidence supports Triangle's assertion that the $1,600 per day demurrage agreed upon by Jackson and Harrison was determined by allocating the cost of the tug at $1,200 and the cost of the barge at $400 per day. It is therefore apparent that the judgment in favor of Jackson and against Harrison in the sum of $10,783.89 for demurrage should be vacated and set aside and judgment entered in favor of Triangle against Harrison for the sum of $8,087.50, and in favor of Jackson against Harrison in the sum of $2,696.39, thus properly allocating the demurrage.

### Conclusion

In Harrison's appeal in Case No. 69–15–Civ., the judgment in favor of Triangle Towing and Transportation Co., Inc. against Nat G. Harrison Overseas Corporation in the sum of $24,887.50, representing Triangle's one-half share of the lost earnings of the Jackson-Triangle joint venture caused by negligent stowage of the barge, as reduced 50 per cent by reason of the unseaworthiness of the barge, is reversed, and this damage issue is remanded for further proceedings consistent with this opinion.

We find no merit to Crawford's cross-appeal. The judgment in Case No. 70–149–Civ., in favor of Thurston Crawford d/b/a River Transit Co. (not incorporated) and Jackson Marine Sales, Inc., jointly and severally, in the sum of $18,885.55, representing 50 per cent of its damages caused by the unseaworthiness of the barge, as reduced by reason of negligent stowage of the cargo, is affirmed.

We find no merit to Jackson's cross-appeal. The judgment in Case No. 70–149–Civ., in favor of Jackson Marine Sales, Inc. against Nat G. Harrison Overseas Corporation in the sum of $8,000 as salvage expense (having been reduced 50 per cent by reason of the unseaworthiness of the barge) is affirmed. Jackson's judgment against Harrison in the sum of $10,783.89 as demurrage is vacated, and judgment is rendered in favor of Jackson against Harrison in the sum of $2,696.39 for demurrage. Jackson's judgment against Harrison in the sum of $24,887.50, representing Jackson's one-half share of the lost earnings of the Jackson-Triangle joint venture caused by negligent stowage of the barge, as reduced 50 per cent by reason of the unseaworthiness of the barge is reversed, and this damage issue is remanded for further proceedings consistent with this opinion.

In Triangle's cross-appeal we find merit to its claim for salvage towage charges and its claim for three-fourths of the demurrage. In Case No. 69–15–Civ., judgment is rendered in favor of Triangle Towing and Transportation Co. against Nat G. Harrison Overseas Corporation for the sum of $5,543.75, for salvage towing charges, as reduced 50 per

cent by reason of the unseaworthiness of the barge. Judgment is also rendered in favor of Triangle against Harrison for $8,087.50 for demurrage.

Except as herein set forth, the judgments in No. 69–15–Civ., 70–149–Civ., and the amended judgment in 70–360–Civ., are affirmed. Each party to bear its own costs.

Affirmed in part; reversed and rendered in part; and reversed and remanded in part.