IT IS HEREBY ORDERED that defendant's motion to dismiss is GRANTED and plaintiff's complaint is hereby DISMISSED.

## FALCON CONSTRUCTION CO.

v.

## BACON TOWING CO., INC.; Marmac Corporation; and General Stevedores, Inc.

### Civ. A. No. H–80–346.

United States District Court,
S.D. Texas,
Houston Division.

July 11, 1985.

As Amended July 26, 1985.

Tom Alexander and Richard Flowers, Butler & Binion, Houston, Tex., for plaintiff.

James Ross and Montgomery English, Ross, Griggs & Harrison, Houston, Tex., for defendant Bacon Towing Co., Inc.

William A. Durham and JoAnn Dahl, Eastham, Watson, Dale & Forney, Houston, Tex., for defendant Marmac Corp.

R. Scott Hogarty, Fulbright & Jaworski, Houston, Tex., for defendant General Stevedores, Inc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

DeANDA, District Judge.

This cause having been tried without a jury, the Court hereby enters the following

memorandum opinion as its findings of fact and conclusions of law, pursuant to Rule 52(a), F.R.Civ.P.

The lawsuit arose out of an incident which occurred on June 11, 1979 in the Houston Ship Channel, a navigable inland waterway. Plaintiff Falcon Construction Co., Inc. leased approximately 220 sheets of metal piling for use in a construction project. The metal was loaded by Defendant General Stevedores, Inc. onto a barge (Barge MCD–267). This barge was owned by McDonough Marine, a division of Defendant Marmac Corporation, and Plaintiff chartered the barge from Marmac. The barge was towed by the M/V RAZOR-BACK, owned and operated by Defendant Bacon Towing Co., Inc. On June 11, 1979, the barge partially capsized and the entire load of metal piling slipped off the barge and into the Ship Channel. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333.

■ We turn first to the question of whether Defendant General Stevedores, Inc. ("Stevedore") should be held liable, in whole or in part, for the loss at issue. A stevedore has a duty to use reasonable care and ordinary diligence in the loading and stowage of cargo. *E.g., Hanson & Orth v. M/V JALATARANG,* 450 F.Supp. 528, 536 (S.D.Ga.1978). Plaintiff must prove a violation of this duty by a preponderance of the evidence. *See Skidmore v. Grueninger,* 506 F.2d 716 (5th Cir.1975); *Movible Offshore, Inc. v. M/V WILKEN A. FALG-OUT,* 471 F.2d 268 (5th Cir.1973). The Court finds that Plaintiff has failed to show a lack of reasonable care and ordinary diligence on the part of the Stevedore.

■ The Stevedore completed the loading of approximately 375 tons of metal piling aboard the barge on the afternoon of June 10, 1979. The loading operations were supervised and performed exclusively by the Stevedore's personnel. The preponderance of the evidence shows that the loading procedures were conducted in a customary, diligent and prudent fashion. Specifically, weight distributions of the cargo were made in accordance with accepted industry standards, adequate dunnage was put in place, and the pilings were appropriately "nested." Plaintiff has argued that, even if the foregoing is true, the cargo was improperly secured. There is a paucity of competent and credible evidence to support this argument. Rather, the pertinent expert testimony establishes that the cargo was adequately lashed and secured for purposes of the intended voyage. Furthermore, in light of the fact that the loss occurred during a partial capsize, it appears to be extremely unlikely that the use of any additional lashings or other securing methods could have prevented the loss. Judgment should be entered in favor of the Stevedore.

Defendant Bacon Towing ("Bacon") moved for judgment at the close of Plaintiff's case and declined to offer any evidence on its own behalf. The Court took the motion under advisement. For the reasons set forth below, the Court has concluded that the motion should be granted.

■ Any liability which may be imposed on Bacon must be predicated on some negligent breach of the duties which flow from a towage contract. Under a towage contract, the owner of a tug (Bacon) is not a bailee of the vessel in tow nor is he a bailee of the cargo aboard the tow. *Stevens v. The White City,* 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699 (1932); *Nat G. Harrison Overseas Corp. v. American Tug Titan,* 516 F.2d 89, 94 (5th Cir.1975). The owner of the tow is responsible for the seaworthiness of his vessel and the owner of the tug for its safe navigation. *Nat G. Harrison, supra,* at 94; *Curtis Bay Towing Co. v. Southern Lighterage Corp.,* 200 F.2d 33, 34 (4th Cir.1952). The owner of a tug is not responsible for the proper stowage of cargo on a barge, for honest errors of judgment on the part of the tug's master, nor for nonapparent unseaworthiness of the barge in tow; further, the tug's master has no duty to make a detailed examination of the barge. *Nat G. Harrison, supra,* at 94, and cases cited therein.

■ Plaintiff contends that the tug master failed to use reasonable judgment, failed to properly inspect the barge and its cargo, and that he improperly operated the tug-tow; further, Plaintiff contends that the tug's master and crew were incompetent. The evidence shows that at the time the tug took the barge in tow, the barge had less freeboard at the stern than at the forward end,[1] in accord with the way the tow was loaded. Based on virtually uncontroverted expert testimony on towage, the master's decision to undertake the towage under these circumstances was reasonable and reflected acceptable industry standards. The master used reasonable judgment.

■ The evidence concerning the apparent seaworthiness (or lack thereof) of the barge was to the effect that an internal patch found in one of the barge's compartments may have been leaking. This patch was below the waterline. Thus, there is no evidence of *apparent* unseaworthiness during the material time-frame. Nonetheless, Plaintiff complains that the tug was somehow responsible for failing to discover allegedly defective hatch covers on the barge. A deckhand visually inspected and kicked each of the hatch covers, and he did not find any apparent defectiveness. No further inspection was required by the applicable legal duties. *See McDonough Marine Service, Inc. v. M/V Royal St.*, 465 F.Supp. 928, *esp.* at 934 (E.D.La.1979).

■ The tug has a duty to keep a tow under observation while under tow, and the degree of care required in relation thereto is measured with reference to the character of the tow and the condition of the seas and weather. *McDonough v. Royal, supra*, at 934. At the time of the loss, the waters were quite calm, no threatening weather was expected, and the tug and its tow were not going to proceed into open waters. Plaintiff has failed to establish the existence of any changed conditions (e.g., a discernable loss of the six-inch freeboard at the aft end of the barge) during the tow which should have alerted the master or crew to take any steps other than those actions which were undertaken by the master. As soon as the barge was noticeably shipping water and listing, the Coast Guard was immediately notified and the vessel attempted to proceed to shallow waters. Under the circumstances, the master and crew of the tug acted reasonably and in a nonnegligent manner. Plaintiff has shown no negligent breach of any applicable duty by the tug.

■ Finally, we turn to the liability issues which concern Defendant Marmac. Plaintiff's allegations of negligence may be summarily disposed of since no specific acts or omissions have been shown by a preponderance of the evidence. However, the question as to the seaworthiness of the barge presents a more substantial question. Pre-loading inspections did not disclose any evidence of unseaworthiness. Post-loss inspections did show a possible leak of an internal patch in one of the main compartments, as noted earlier. (The barge contains six water-tight compartments of various sizes.) The only compartment found during post-loss surveys to contain significant amounts of water was the stern rake compartment. Drydock surveys failed to uncover holes, fissures or cracks in the rake compartment. Some evidence indicates a hatch cover inexplicably came loose, allowing the barge to take water. The tug master noticed a substantial list just prior to the loss. Hence, the evidence of unseaworthiness is far from conclusive or obvious, and it is conceivable that the instant loss is "an unexplained accident of the sea." *American Cement Corp. v. Healy Tibbitts Constr. Co.*, 249 F.Supp. 891, 894 (S.D.Cal.1966), *aff'd*, 371 F.2d 525 (9th Cir.1967). However, based on the fact that the rake compartment *was* (somehow) flooded, and based on the master's testimony concerning the pre-loss listing of the barge's aft, the Court finds it to

---

1. Plaintiff characterizes the evidence as showing that the barge was "listing heavily to aft" and on the verge of sinking when the master and crew inspected the barge. The Court does not concur with this characterization.

be more likely than not that the barge was unseaworthy.

Defendant Marmac contends that even if the barge was unseaworthy, Plaintiff may not recover based on a provision of the private contract of charter entered into by Plaintiff and Marmac. On June 4, 1979, Plaintiff contacted a division of Marmac and requested a deck barge to transport the cargo of pilings at issue. Over a period of several years prior to the instant loss, Marmac had provided barges to Plaintiff. The customary procedure for chartering these barges has been that a customer places a telephone call to Marmac requesting a barge, and this request is memorialized on a barge rental ticket. Then, a standard form charter party is completed by Marmac and mailed to the customer to be signed, with one signed copy being returned to Marmac by the customer. This procedure is common in the relevant industry, and had been routinely followed by Plaintiff and Marmac on previous occasions. Plaintiff therefore was, or reasonably should have been, fully aware of the terms and conditions of the charter party.

The charter provides, in pertinent part, that the owner of the barge (Marmac or one of its divisions) agreed to obtain, carry and pay for full form hull and protection and indemnity insurance ("P & I") on the barge. The charter party expressly provides that if the charterer provides insurance, the owner will be an additional assured and that subrogation rights will be waived. Further, the charterer (Plaintiff) is to protect, defend, hold harmless and indemnify the owner for any loss not covered by insurance, and P & I Insurance for cargo loss is to be carried by the charterer.

Plaintiff contends that the standard charter party discussed immediately above was not executed here, that its terms are not binding in this case, and that instead, an oral or implied charter of the barge in question was "executed" without *any* terms and conditions except as to price. Harry Carlton, Sr., an officer of the Plaintiff company, testified that he did not recall ordering the barge in question. He conceded that he had signed Marmac's standard charter party forms in the past, and further testified that he had been informed that Marmac would carry insurance on the barge itself.

 The standard charter party was not executed by Plaintiff on the occasion at issue, although it is uncontroverted that the charter party was provided to Plaintiff. However, the charter party provides on its face for an alternative means for acceptance of its terms, namely, by accepting the barge. It cannot be disputed that Plaintiff did in fact accept the barge. It necessarily follows that Plaintiff is bound by the terms of the charter party. Furthermore, the parties have stipulated that the loss of the steel piling cargo would have been covered by a standard marine cargo insurance policy if one had been in effect.

Plaintiff's contention that an oral or implied charter is controlling of the instant issue is contrary to the great weight of the evidence. Moreover, the contention flies in the face *both* of established custom in the industry and the prior dealing of Plaintiff and Marmac concerning similar transactions. Another reason for rejecting Plaintiff's contention is that it is legally untenable. For example, in the very similar case of *U.S. Ore Corp. v. Commercial Transport Corp.*, 369 F.Supp. 792 (E.D.La.1974), the court concluded that the parties were bound by the terms of a contract for shipment even though the contract provided that the "agreement will become effective when signed" and it was never signed. The *Ore* court recognized the well-settled legal principle that a contract can have alternative means of acceptance, and that if an offeree fails to comply with the requested method of acceptance, but actually tenders the requested performance pursuant to the terms of the agreement, the performance itself acts as an acceptance, thereby binding the parties to the entire contract. *Id.*, at 796. By accepting and using the barge, Plaintiff became bound by the terms of the unsigned charter party. The Bareboat Barge Charter Party dated June 6, 1979, the pertinent terms of which

were outlined earlier, governs the legal rights, duties and relationship between Plaintiff and Marmac.

 The law of this Circuit is clear that in a private contract of charter the parties may stipulate as to which party will carry insurance for certain risks, and may further provide that if such insurance is not carried by that party, then such party may be required to fully indemnify and hold harmless the other party to the charter contract. *E.g., Hercules, Inc. v. Stevens Shipping Co., Inc.*, 698 F.2d 726, 737–739 and cases cited therein (5th Cir.1983). Moreover, the enforcement of charter party terms such as those at issue here is consonant with certain realities of risk-spreading and underwriting in the industry. Specifically, evidence in this case shows that Marmac cannot feasibly obtain insurance on cargo since the P & I underwriters are of the opinion that a barge owner does not have any insurable interest in the cargo. It follows that the charterer (or the owner of the cargo) should carry insurance for cargo loss or else suffer the consequences of failing to do so.[2]

 Plaintiff breached the terms of the controlling contract and therefore may not recover from Marmac "any loss which would have been covered by such insurance." *Slade, Inc. v. Samson Towing Co.*, 327 F.Supp. 555 (E.D.Tex.1970). It has been stipulated that the loss at issue would have been governed by a standard policy of marine cargo insurance. Plaintiff may not recover from Marmac. The provisions of the charter party not only bar any recovery by Plaintiff from Marmac, they also mandate a full indemnification of Marmac by Plaintiff for any cargo loss. This includes Marmac's attorney fees and costs of defending the instant action. Counsel for Marmac shall submit either a stipulation as to the amounts of attorney fees and costs or an affidavit thereon within 10 days of the date judgment is entered herein. Plaintiff may file a counter-affidavit as to said amounts within 10 days thereafter. The Court will retain post-judgment jurisdiction to determine the reasonable and proper amount of attorney fees and costs recoverable by Marmac.

The Defendants' various cross-actions are now moot.

Finally, by Order dated June 28, 1983, the third-party complaint filed by Defendant Bacon Towing against R.A. Gregg, Stafford McGuire, James Young, Proprietors Ins. Co., and Robert Ratchford, Jr. was severed from this cause and designated as CA H–80–346–A. The severed cause pertains to reinsurance issues which are not necessarily rendered moot by the entry of judgment in this main cause. A pretrial conference will be set therein by separate order.

A Final Judgment will be entered in favor of Defendants.

---

**2.** This is so, unless the parties have contractually agreed to do otherwise.