**MARINA MANAGEMENT GROUP, INC., Plaintiff–Appellant,**

v.

**BASIC TOWING, INC.; Daniel Kobasic, Defendants–Appellees.**

No. 01–2174.

United States Court of Appeals, Sixth Circuit.

May 29, 2003.

Before RYAN, BATCHELDER and LAY,* Circuit Judges.

BATCHELDER, Circuit Judge.

Marina Management Group, Inc. ("MMG"), plaintiff/appellee, appeals the district court's order granting summary judgment to Basic Towing, Inc. and its President Daniel Kobasic ("Basic Tow-

---

* The Honorable Donald P. Lay, Circuit Judge for the United States Court of Appeals, Eighth Circuit, sitting by designation.

ing"), defendants/appellees, in this admiralty action for negligence brought by MMG. Because we conclude that the plaintiff has failed to demonstrate any negligence on behalf of Basic Towing, we will affirm the judgment of the district court.

## BACKGROUND

MMG filed this action seeking damages for the loss of its sixty-one foot motorized hopper barge, the *Leprechaun,* which sank in Lake Michigan while being towed by Basic Towing pursuant to an agreement between the parties. The agreement called for the barge to be towed from Point Brulee, Michigan, to Grand Haven, Michigan, a trip that would take about 26 hours. On April 1, 2000, MMG's representative Richard Barrett moved the *Leprechaun* to open waters to begin the tow. Daniel Kobasic, the President of Basic Towing and the master of the tug that would tow the barge, performed a visual inspection of the *Leprechaun* and discovered several cracks in the welding of the deck. Kobasic repaired these cracks with rags and silicone caulk. During the visual inspection, Kobasic asked Barrett about the condition of the ballast-type tanks below the deck of the barge. Barrett assured Kobasic that he had examined the tanks himself and they were dry. The watertight hatches to those tanks were then sealed. Kobasic also inquired about a slight list to the starboard side that Barrett explained was caused by the placement of a motorized power unit on that side of the barge. After the inspection, Kobasic specifically asked Barrett if he was "aware of the potential problems" and if he wanted the barge towed in its current condition. Barrett responded that he wanted Kobasic to tow the *Leprechaun* that evening.

Several hours into the trip, the starboard bow of the *Leprechaun* appeared to be riding low in the water. After pulling the tug alongside the barge, Kobasic and his crew could see that the starboard bow was awash, indicating that the barge must be taking on water. Kobasic began towing the barge stem-first in an attempt to lessen the amount of water entering the barge. As the tow became more difficult, Kobasic decided to try to tow the barge to Basic Towing's main dock for repairs instead of completing the intended route. When Barrett was informed of the deteriorating situation, he requested that Kobasic use pumps to help keep the barge afloat, but Kobasic, citing safety concerns for his crew, refused to let anyone board the *Leprechaun.* As the barge rode lower and lower in the water, endangering the tug as well as the barge, Kobasic eventually decided to cut the tow line. The *Leprechaun* quickly sank into the 400 foot depth of Lake Michigan. It was never recovered.

MMG filed a lawsuit in admiralty alleging that Basic Towing (1) breached its duty of care and was negligent in towing the *Leprechaun,* causing the barge to sink in Lake Michigan; (2) breached the tow contract by failing to deliver the barge; and (3) breached the warranty of workmanlike service by failing to tow the barge in a careful, safe, prudent, and workmanlike manner. Basic Towing counterclaimed for breach of contract and filed a motion for summary judgment. The district court found that the *Leprechaun* was unseaworthy and that MMG had failed to provide any evidence of negligence. The court granted Basic Towing's motion for summary judgment on all claims except the breach of contract cause of action and counterclaim, which the parties had failed to brief properly.

MMG timely filed its notice of appeal, and the parties stipulated to the dismissal of MMG's contract claim and Basic Towing's counterclaim pending the disposition

of this appeal. Before us, MMG contends that the district court erred in finding that no genuine issue of material fact remained for trial with regard to negligence on the part of Basic Towing in inspecting the barge before undertaking the tow or in its towing of the barge; MMG further contends that a genuine issue of fact remains as to whether Basic Towing's negligence contributed to the loss of the barge.

## ANALYSIS

We review a district court's grant of summary judgment de novo, using the same standard under Rule 56(c) used by the district court, *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999) (en banc), and considering the record as it stood before the district court at the time of its ruling. *Niecko v. Emro Marketing Co.*, 973 F.2d 1296, 1303 (6th Cir.1992). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To withstand summary judgment, the non-movant must present sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir.1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"The owner of a tow is responsible for its seaworthiness, and the owner of the tug for its safe navigation." *Valentine Waterways Corp. v. Tug Choptank*, 260 F.Supp. 210, 212 (E.D.Va.1966) (citing *Curtis Bay Towing Co. of Virginia v. Southern Lighterage Corp.*, 200 F.2d 33 (4th Cir.1952)). A tug must "exercise such reasonable care and maritime skill as prudent navigators employ for the performance of similar service," *Stevens v. The White City*, 285 U.S. 195, 202, 52 S.Ct. 347, 76 L.Ed. 699 (1932), and the burden is upon the tow to establish that "the loss for which he [seeks] recovery was caused by a breach of that duty." *Id.* A court may presume that a vessel towed by a barge was unseaworthy when it sinks under normal conditions and there is no proof that the tow was improperly handled. *King Fisher Marine Service, Inc. v. NP Sunbonnet*, 724 F.2d 1181, 1184 (5th Cir.1984). A tug becomes liable for the loss of an unseaworthy tow only if the condition was so obvious and apparent that it would be unreasonable for the tug operator not to notice it. *Id.* To establish the negligence of Basic Towing and to overcome the presumption that the *Leprechaun* was unseaworthy, MMG argues that Basic Towing failed to make a reasonable inspection, failed to use reasonable care to pump water from the barge and failed to refrain from towing the barge when Kobasic should have known it was unseaworthy.

■ Turning first to the claim of unreasonable inspection, we understand MMG's argument to be that Kobasic's inspection was unreasonable because he did not personally inspect the lower ballast-type tanks

of the barge, but instead relied upon Barrett's claim that they were dry. The law, however, does not require a tug operator to make a detailed inspection of an apparently seaworthy barge. *Nat G. Harrison Overseas Corp. v. American Tug Titan,* 516 F.2d 89, 94 (5th Cir.1975). A tow owner's assurances of a vessel's seaworthiness in response to specific inquiries by the tug eliminate the need for a detailed and in-depth inspection. *The Dow Chemical Co. v. M/V Gulf Seas,* 428 F.Supp. 667, 671 (W.D.La.1977). Kobasic had a right to rely upon Barrett's representation that the barge was dry and his reasonable explanation for the vessel's slight starboard list, and MMG presented no evidence from which a reasonable jury could have found that Kobasic should have recognized at the time of his inspection that the barge was not as Barrett represented it to be. We agree with the district court that no genuine issue of fact remains for trial on this issue, and that MMG failed to show that Kobasic was unreasonable in relying upon Barrett's assurances and completing only a visual inspection of the barge.

■ MMG's argument that Basic Towing was unreasonable in refusing to pump water from the *Leprechaun* while the barge was in tow is not supported by the record. Kobasic presented unrefuted evidence that he refused to put crew members on the sinking barge to pump water while the barge was in tow because to do so would have endangered those men. Neither did MMG refute Kobasic's testimony that he feared a loss of pressure from opening the hatches to pump, which would increase the rate at which the barge would take on water, thus increasing the danger both to the barge and to the tug crew. A captain's concern for his crew is paramount and deference is due any decision regarding safety. *See Dow Chemical,* 428 F.Supp. at 672. We agree with the district court that MMG failed to present any evidence from which a reasonable jury could find Kobasic negligent in refusing to put his crew onto the *Leprechaun* to pump out the water.

■ MMG argues that it was unreasonable for Kobasic to agree to tow the barge, regardless of Barrett's desire for the tow to take place, after Kobasic raised his specific concerns about the condition of the barge.

> "[T]he tug cannot complain about a condition of unseaworthiness or other weakness that caused the loss if it knew of the condition and failed to use reasonable care under the circumstances. If the alleged unseaworthiness is so apparent that it would be negligent for the tow to attempt to proceed, it cannot disclaim responsibility for the loss."

*King Fisher,* 724 F.2d at 1184 (citations omitted) (finding that the tug was liable for the sinking of a vessel when it knew of assorted cracks on the barge's surface and loose hatches but did nothing about the defects, and these defects allowed water to enter an otherwise seaworthy vessel and caused the sinking of the ship). The issue here is whether MMG has met its burden of showing that it was "so apparent" that the *Leprechaun* was unseaworthy that the tug master was negligent in undertaking to perform the contract to tow.

The facts of the case at bar distinguish it from *King Fisher.* In *King Fisher,* the tug master knew of and did nothing about cracks on the surface of the tow, including one crack some two feet long, as well as loose barge hatches and a hole three feet in diameter covered by a plate that was not watertight. Moreover, although the tug master knew that water could enter the cracks, the hole and hatches, he towed the barge through swells high enough and speeds great enough to cause the water to cover the deck. And in *King Fisher,* the

district court specifically found that the barge was seaworthy because it had just made a trip carrying a heavy load of steel without apparent difficulty; internal compartments appeared to be fit; the barge was not heeling; and the tug master had observed the barge in the water for a day and a half before undertaking the tow and saw no signs of problems. In sum, although the barge was seaworthy, the tug master was aware that water could enter the barge through cracks and holes on its surface, and he towed the barge in a manner that permitted the water to enter the barge and sink it.

Unlike the barge in *King Fisher*, the *Leprechaun*'s only obvious problems were the cracks on its deck and a slight starboard list. Barrett adequately explained the list and Kobasic repaired the cracks, and the fact that Kobasic was concerned about these things does not rise to the level of evidence showing "apparent unseaworthiness." In any event, there is no evidence that these conditions "caused the loss." *Id.* The record does not contain evidence of rough water or excessive speed that caused the water to break over the deck such that the water could have entered the barge through the caulked cracks, nor does the record contain evi-

dence that the starboard list contributed in any way to the water's entering the barge. In the absence of any evidence that the caulked surface cracks or the starboard list caused the *Leprechaun* to sink, the district court correctly concluded that the record contained no evidence from which a reasonable jury could find that the barge was so obviously unseaworthy that Kobasic was negligent in undertaking the tow.

Finally, MMG argues that a genuine issue remains for trial as to whether Basic Towing's negligence contributed to MMG's loss. Because we conclude that the district court correctly held that MMG failed to present evidence that Basic Towing was negligent at all, we find no merit to this contention.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.